**HANOVER INSURANCE COM-PANY, Plaintiff,**

v.

**LIBERIAN OCEANWAY CORP. et al., Defendants,**

v.

**The PORTO RICO LIGHTERAGE CO. et al., Third-Party Defendants.**

**Civ. No. 333-72.**

United States District Court,
D. Puerto Rico.

April 11, 1975.

Charles A. Cordero, San Juan, P.R. for plaintiff.

Bird & Bird, San Juan, P.R., for Liberian Oceanway Corp.

Vicente M. Ydrach, San Juan, P.R., for Porto Rico Lighterage Co.

José M. Pizarro Zayas, San Juan, P.R., for P.R. Ports Authority.

Harry A. Ezratty, San Juan, P.R., for Juan A. Alicea.

## MEMORANDUM OPINION AND ORDER

PESQUERA, District Judge.

There are several matters pending resolution by the Court. For the purposes of clarity and understanding, we first set forth certain

### Background Information

The instant action involves a subrogation claim by plaintiff Hanover Insurance Company against the defendant Liberian Oceanway Corp. (Liberian), which at the time of the incident alleged in the complaint, was the admitted owner/operator of the vessel S.S. Dimitrios. Jurisdiction is pleaded under the diversity statute, 28 U.S.C. 1332, and the sum in controversy is well over the requisite jurisdictional amount.

The complaint alleges that on April 22, 1971, at about 3:30 a.m., while the vessel was trying to maneuver for docking at Pier #15, San Juan Harbor, the vessel collided and damaged the caisson gate which forms part of certain drydock's facilities insured by Hanover. Liberian denied the essential elements of the complaint and filed several third party actions including, among others, as third party defendants the Puerto Rico Ports Authority (Ports Authority) and a harbor pilot, Juan L. Alicea (Alicea). Liberian seeks recovery from Alicea whom it employed to render pilot services and which services Liberian claims were performed in a negligent manner. Liberian further seeks recovery from Ports Authority claiming that Ports Authority controls the conduct of harbor pilots; that Alicea is a *de facto* agent of Ports Authority; and that Ports Authority violated the duties imposed by law in its failure to adopt regulatory rules

for harbor pilots and in renewing Alicea's pilot license without first compelling Alicea to post the bond required by statute.

Extensive discovery proceedings were initiated by Hanover and Liberian, and during the course of such discovery, both parties moved the Court for sanctions, protective orders and for reconsideration of existing orders which matters, by stipulation, were submitted to the magistrate for resolution. Some of these discovery related motions are still pending resolution.

Hanover has now moved, with supporting documents, for partial summary judgment against Liberian claiming there is no material issue of fact as to Liberian's liability, and seeking an award for attorney's fees from Liberian under the local statute allowing recovery of such fees when a party acts with temerity. *Pan American v. Ramos*, 357 F. 2d 341, 342 (1 Cir.). Liberian opposed Hanover's petition and countered with a motion to dismiss claiming that under Federal Maritime Law when a collision is caused by a compulsory pilot an *in personam* action must be dismissed. Liberian further urges that there is controversy as to whether the vessel was a "dead-ship" at the time of the accident and that there is also controversy as to whether Hanover's insured contributed to the cause of the accident by not having a dock master present at the time of the accident.

Ports Authority has also moved for summary dismissal of Liberian's third party complaint, but without supporting documents, admitting that although the statute (23 LPRA 2401) grants the Ports Authority control over harbor pilots, Alicea was not its *de facto* agent; that regulatory rules were in force; and that there is no direct causal relationship between its alleged conduct in granting Alicea a pilot license without the requisite bond, and the damages allegedly caused by Alicea's negligence.

Liberian timely opposed Ports Authority's petition claiming a controversy of fact exists as to the status of Alicea, i.e., whether the existing relationship between Alicea and Ports Authority was that of agent or independent contractor. Liberian has also countered with a motion for partial summary judgment against Ports Authority on the grounds that it is an admitted fact that Ports Authority violated the 1968 legislative mandate prohibiting the licensing of unbonded harbor pilots. Liberian further insists that if it proves Alicea's negligence was the cause of the accident, then it would be damaged since Alicea claims to be judgment proof. This potential damage, argues Liberian, can be directly attributed to the negligence of Ports Authority in failing to compel Alicea to post the requisite bond, and thereby failing to comply with the mandate imposed by law.

From the documents, exhibits and other material which form part of the record, the Court now makes the following

### Findings of Fact

1. On April 22, 1971, at about 3:30 a.m., the vessel S.S. Dimitrios, owned and operated by Liberian, entered San Juan Harbor with its officers and crew aboard. The vessel had engine problems and was coming to San Juan for repairs. Liberian had employed the services of Alicea as the harbor pilot in compliance with a local statute requiring the use of a licensed harbor pilot by all foreign vessels. The vessel was able to move with its own steering mechanism and its engines were rotating between 25–38 r.p.m. The vessel had also requested, and received, the assistance of a tug. During the docking maneuvers, the vessel struck the caisson gate located near Pier # 15 which gate forms part of the drydock's facilities of Puerto Rico Drydock and Marine Terminal and was insured by Hanover.

2. There is a factual controversy as to whether at the moment of the accident the vessel was being maneuvered by the vessel's master, by Alicea, or by both of

them; however, there is no controversy as to the fact that the vessel did collide and damaged the caisson gate.

3. At the time of the accident, Alicea was in the service of the vessel, and had a current pilot license issued by the Ports Authority. However, Alicea had not been required to post a bond by the Ports Authority as required by the statutory provisions of 23 LPRA '2405.

4. The status of Alicea as an independent contractor or as a *de facto* agent of the Ports Authority remains a triable issue of fact for jury determination as this Court cannot make such determination from the unsubstantiated allegations of either Liberian or Ports Authority.

5. Up to this date the Ports Authority has not promulgated the new rules or regulations authorized and required by Law No. 151, June 28, 1968, 23 LPRA 2109 and 2502, respectively, and the Ports Authority regulates pilotage service under an existing statutory scheme converting certain provisions of the old Law No. 59 of 1928 into temporary rules and regulations. After seven years, the most the Ports Authority has done in attempting to comply with the clear legislative mandate is to prepare proposals which it is presently considering.

6. The rules and regulations which the Ports Authority must prepare include the fixing of the amount of the performance bond which has to be posted by all harbor pilots prior to their receiving a license. The Ports Authority has never gotten around to complying with the simple procedure of setting an amount of bond to be posted, and has opted instead for violating the bond requirement statute (23 LPRA 2405) by issuing licenses to harbor pilots without requiring them to post bonds.

7. Liberian's claim that Alicea is insolvent cannot be accepted by this Court on the mere testimony of Alicea. Should it be proven, however, that Alicea is in fact insolvent, and that Alicea is in fact liable to Liberian for the damages he caused, then Liberian has a valid

claim against Ports Authority. Since the Ports Authority, through its negligent omission has, in effect, waived the bond requirement for harbor pilots, then it is only fair and equitable that it warrants to vessel owners and operators, and the owners of pier's facilities within Puerto Rico, that it (Ports Authority) will guarantee payment of damages caused by the improper performance of a harbor pilot in carrying out his duties. By its willful disregard of the law, the Ports Authority has converted itself into a surety of all harbor pilots in Puerto Rico and is, therefore, liable to Liberian in the event that Alicea is proven negligent. Ports Authority does have a right of recovery against Alicea as would any other bonding company, if it is compelled to pay any damages caused by Alicea.

8. At this point, therefore, Liberian has a valid cause against Ports Authority as surety and Liberian's claim is not subject to dismissal unless Alicea is proven to be *not* liable for the mismanagement of the vessel, or unless Alicea satisfies any judgment if he is found liable.

With these findings of fact completed, we next direct our attention to the

### Conclusions of Law

The Commonwealth of Puerto Rico has the power of making laws applicable to its own navigable waters and harbors; *Guerrido v. Alcoa*, 234 F.2d 349 (1 Cir. 1956), and its progeny, and the legislature of Puerto Rico under its police powers can validly pass statutes holding vessel owners absolutely liable for damages caused to piers and harbor's structures within the navigable waters of Puerto Rico; *Askew v. American Waterways Operators, Inc., et al.*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); *Molinos v. Sheridan Towing Co.*, 62 F.R.D. 172 (D.C.).

In Puerto Rico, any damage to piers, docks or any other harbor's structure, caused by improper management of the vessel, or by any other cause, shall be paid by either the owner, master,

consignee, agent or person in charge of the vessel; 23 LPRA 391; *Molinos v. Sheridan, supra*; and an *in personam* action is proper and applicable against a vessel owner or operator, 23 LPRA 2303(a).

The cause against Liberian in this case is founded under a locally applicable statute which gives rise to an *in personam* action, and plaintiff in the instant case does not rely on Federal Maritime Law for the origin of its cause.

■■ Maritime principles are, however, applicable to this case and therefore this Court under the recognized powers granted to an admiralty court, is authorized to grant equitable relief even in cases where that relief is subsidiary to the main admiralty issue; *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88; and an admiralty court may apply equitable principles to subjects within its jurisdiction; *Schoenamsgruber v. Hamburg American Lines*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989.

■■ For a defense under the "deadship" doctrine to prevail, the vessel must be completely without power, inert, incapable of maneuvering, and be an innocent instrument of the harm produced by the mismanagement of another vessel. Such a defense is therefore not available to Liberian since the facts prove that the vessel was not a "dead-ship".

■ A defense of contributory negligence because of the absence of the dock master employed by Hanover's insured for the sole purpose of guiding vessels into drydock, is likewise not available to Liberian where the facts prove that Liberian never requested the assistance of a dock master and where the vessel was not going into drydock. Indeed, if a dock master were that important, the vessel would then be required to petition and await the arrival of the dock master before proceeding with docking operations.

■ Any party who by an act or omission causes damages to another when there is fault or negligence, shall be obliged to repair the damage so done; 31 LPRA 5141, and where the damages are the result from the combined negligence of several persons, such persons are jointly and severally liable and the injured party may bring an action against one or all of them; *Rivera v. Great American Insurance Co.*, 70 PRR 787.

■ The summary judgment procedure authorized by Rule 56, F.R.Civ. P., is a method for promptly disposing of actions in which there is no genuine issue as to any material fact and on which only a question of law is involved. The moving party has the burden of clearly demonstrating that there is no genuine issue of fact and any doubt as to the existence of such an issue must be resolved against him: *Heyward v. Public Housing Administration*, 238 F.2d 689 (5 Cir.). Thus, the proper role of the courts under a Rule 56 motion is to determine whether there are issues of fact to be tried and the court must examine the affidavits or other evidence presented to determine whether a triable issue exists (*Toebleman v. Missouri*, 130 F.2d 1016 (3 Cir.), *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647 (5 Cir.)), and summary judgment should issue when there are no substantial and genuine material issues of fact in dispute (*Molinos v. Sheridan, supra*).

■ A court should allow a party to investigate and present at trial a careful analysis of all circumstances that may penetrate or go beyond the label of "independent contractor" inserted in a document, in order for the court to determine whether or not a person is really an independent contractor or an agent; *Pérez v. Hato Rey Building Co.*, 100 DPR 882; 100 PRR ——, and such determination can best be made after a full disclosure of all the evidence at trial. Even assuming the existence of a true "independent contractor" relationship,

there may be certain factors that may impose liability upon the principal; *Vélez v. Garcia Commercial*, 100 DPR 645, 100 PRR ——; *City of Long Beach v. American President Lines*, 223 F.2d 853 (9 Cir.), and these factors should be reviewed after all evidence has been submitted.

While it may be argued by the Ports Authority that even as a surety an action against it may be premature at this time, the law nevertheless imposes upon the courts in all suits of a civil nature, whether they be cases at law, or in equity, or in admiralty, an obligation to construe the procedures in such a manner as to secure the fast, speedy and inexpensive determination of every action, Rule 1, F.R.Civ.P., and with this mandate in mind, this Court holds that the Ports Authority is a proper defendant in this case.

With the above findings and conclusions, this Court hereby

Orders that plaintiff's motion for partial summary judgment on the issue of liability be and is hereby granted. Judgment shall be entered accordingly; and it is further

Ordered that defendant Liberian's motion to dismiss be and is hereby denied; and it is further

Ordered that plaintiff's prayer for attorney's fees on the issue of defendant's temerity be held in abeyance; and it is further

Ordered that Ports Authority's motion for summary judgment be and is hereby denied; and it is further

Ordered that Liberian's counter motion for summary judgment be and is hereby denied; and it is further

Ordered that this case be returned to the Magistrate of this Court for resolution of the pending discovery related motions; and it is further

Ordered that the Clerk of this Court place this case on calendar for pretrial and trial after the Magistrate resolves the aforestated pending motions.