**Adolfo CAMPOS, Plaintiff,**

v.

**PUERTO RICO SUN OIL CO., INC., Defendant.**

Civ. No. 74–485.

United States District Court, D. Puerto Rico.

April 28, 1975.

Harry A. Ezratty of Ezratty & Sarraga, San Juan, P. R., for plaintiff.

Jorge L. Martinez, Goldman, Antonetti, Barreto Cubelo & Davila, Santurce, P.R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

This is a suit within the admiralty and maritime jurisdiction of this Court. 28 U.S.C. 1333, Ex parte McNiel, 80 U. S. 236 (13 Wall.), 20 L.Ed. 624 (1871).

Plaintiff, a duly licensed pilot for Vieques Sound which is located off the East Coast of Puerto Rico, claims pilot fees from Defendant, the owner of various vessels transiting through said waters as they enter and leave the port of Yabucoa, Puerto Rico.

Plaintiff has a first class pilot's license for Vieques Sound from both the United States Coast Guard and the Ports Authority of the Commonwealth of Puerto Rico.[1] Sometime in 1971 an artificial harbor was completed at Defendant's oil refinery in Yabucoa, and thereafter ships commenced arriving and departing to and from the same. On November 1, 1971, and then again on March 13, 1972 and June 8, 1973, Plaintiff offered his services to Defendant as pilot for Vieques Sound. These services were not used, but instead Defendant used the services of another pilot, Mr. Fructuoso Reyes.

On October 1, 1971 the Puerto Rico Ports Authority had issued a license to Mr. Reyes certifying that he "has given satisfactory evidence . . . that he is a skillful Pilot . . . and can be entrusted to perform such duties in the waters of Yabucoa." Additionally, Mr. Reyes has a first class pilot's license from the United States Coast Guard for various harbors in Puerto Rico, including the Port of Yabucoa, which license was issued on October 29, 1971. On April 18, 1972 this license was endorsed as "first class pilot from sea to Puerto de Yabucoa." Although Mr. Reyes has taken preliminary steps in this direction, he has not taken the test, nor been licensed for, Vieques Sound by either the United States Coast Guard nor the Ports Authority of the Commonwealth of Puerto Rico.

In bringing vessels into Yabucoa harbor, Mr. Reyes boards at Lat. 1801' North and Long. 6547' West. This point is located outside the line of demarcation of Vieques Sound and is in the Caribbean Sea.[2] The vessels then travel approximately 2 nautical miles[3] through Vieques Sound before entering the harbor at Yabucoa. A similar procedure is followed in leaving Yabucoa Harbor, but in inverse order.

---

1. 46 U.S.C. § 214 et seq., 23 L.P.R.A. § 2401 et seq.

2. See Section 82.245 of 49 CFR 1.46(b) and U. S. Coast Geodetic Survey Chart # 904.

3. The total distance from the boarding position to the entrance buoys at Port Yabucoa is 2.19 nautical miles (ie, 2.52 statutory miles).

Puerto Rico is a compulsory pilot jurisdiction whereby all alien ships or any ship[4] of the United States navigating under registration are required to obtain the services of a pilot licensed by the Ports Authority before leaving or entering a harbor,[5] 23 L.P.R.A. § 2412. State statutes regulating pilotage have been specifically allowed by Congress to operate within the general federal jurisdiction over this subject matter, 46 U.S. C. § 211; Cooley v. Board of Wardens of Ports of Philadelphia, 53 U.S. 299 (12 How.), 13 L.Ed. 996 (1851). The licenses issued by the Ports Authority are valid only for the port or ports for which they are issued, 23 L.P.R.A. § 2403. The licenses are issued only after "*a careful examination* of [the applicant's] qualifications" which shall include "adequate knowledge . . . of the tides, anchorages and peculiarities of the port or ports for which [said] license has been issued." 23 L.P.R.A. §§ 2406, 2404.[6]

As previously stated, Mr. Reyes has never taken any examination authorizing him to engage in pilotage in Vieques Sound. Thus any endorsement in his license or any indication by either the United States Coast Guard or the Ports Authority to the effect that he could so act, was *ultra vires*. When Mr. Reyes acted as pilot for Defendant through Vieques Sound, he did so without a valid license and thus contrary to law. We consider that the distance traveled by Defendant's vessels through said body of water to be immaterial if in fact there was unauthorized pilotage through Vieques Sound. We note in passing however, that two nautical miles are not too far short of the total distance traveled by most pilot-manned ships in most ports in Puerto Rico. The point is, that with an unauthorized pilot on board, Defendant had no more a legal pilot than if the ships had been guided in by their own crew, a situation which clearly would not exempt Defendant from payment of the mandatory pilotage fee. Cooley v. Board of Warden of Ports of Philadelphia, supra.

Since Plaintiff on several occasions "spoke" Defendant's vessels, a situation undisputed and admitted to by Defendant, we are forced to conclude that Defendant must pay Plaintiff pilotage fees pursuant to 23 L.P.R.A. § 2414, for the period here in question. Steamship Co. v. Joliffe, 69 U.S. 450 (2 Wall.), 17 L.Ed. 805 (1864); The Swift Arrow, 292 F. 651 (D.C.Mass., 1923).

The parties are ordered to meet within the next 10 days to file a stipulation regarding the facts necessary for the entry of the monetary award. If an agreement cannot be reached on said facts, the parties shall notify the Court for the setting of an evidentiary hearing.

It is so ordered.

---

4. Exemptions are contained in 23 L.P.R.A. § 2413.

5. The words "harbor", "port", and "navigable waters of Puerto Rico" are used indistinctly throughout the Dock and Harbor Act of 1968, 23 L.P.R.A. § 2401 et seq., and we hold them to mean any body of water where pilotage is required by the Ports Authority, such as Vieques Sound.

