GETTY REFINING & MARKETING COMPANY and Sveriges Angfartygs Assurans Forening (The Swedish Club), Plaintiffs,

v.

The PUERTO RICO PORTS AUTHORITY, et al., Defendants.

Civ. No. 80–2188.

United States District Court, D. Puerto Rico.

Jan. 7, 1982.

Francisco G. Bruno Rovira, Hartzell, Ydrach, Mellado, Santiago & Pérez, Hato Rey, P. R., for plaintiff.

Paul E. Calvesbert, Hato Rey, for co-defendant Crowley Towing & Transportation Co.

James A. Toro, San Juan, for co-defendants McAllister Bros.

Ernesto Rodriguez Suris, San Juan, for Puerto Rico Ports Authority.

Harry A. Ezratty, San Juan, for Cesar Augusto Montes.

## OPINION AND ORDER

GILBERTO GIERBOLINI, District Judge.

This is an action to recover damages resulting from the collision of a ship with a pier. Briefly summarized the pertinent facts are as follows:

On or about October 13, 1979, the M/T New York Getty arrived at the entrance of the San Juan Harbor and was boarded by harbor pilot César Augusto Montes (MONTES) who took control of the vessel. After entering the Army Terminal channel under the assistance of tugs Dorado and Neill McAllister, the vessel's bow struck the pier and sustained damages as a result thereof.

Based on these facts, plaintiff alleged that the allision and the damages resulting therefrom were due to the fault and negligence of codefendant Montes, who failed to exercise good seamanship and due care and was otherwise careless and incompetent in the performance of his duties.

The Puerto Rico Ports Authority's (THE AUTHORITY) negligence allegedly consisted in having issued and/or renewed the pilot license of Montes without properly

instructing or training him as a competent pilot. It is further argued that the Authority is liable to plaintiffs as surety for the negligence of Montes for having issued and/or renewed his license without compelling him to post a bond as required by Section 2405 of Title 23 (the Puerto Rico Dock and Harbor Act) and because Montes was a *de facto* agent for the Authority.

It is further asserted that the Authority is liable for having provided to the M/T New York Getty a berth facility not fit for its intended purpose and for failing to provide a safe berth with sufficient depth and lighting.

Finally, it is alleged that the tugs Dorado and Neill McAllister and their respective owners, operators and controllers were negligent, in that the tugs were of insufficient size, power and number and, thus, unseaworthy.

Codefendants Crowley Towing and Transportation Corporation (CROWLEY), McAllister Brothers (Puerto Rico) Inc. and McAllister Brothers Inc. (the Owners) have filed cross-claims against Montes and the Authority basically alleging that Montes is an agent of the Authority and as such, the Authority is vicariously responsible for his negligence. Furthermore, the Authority is allegedly liable for having failed to require a bond from the harbor pilot.

Now pending before us are motions to dismiss filed by the Authority and by Montes.

As stated before, plaintiffs' claim and the cross-claims of the owners of the tugs against the Authority are predicated on the alleged fact that Montes is or was at the time of the accident a *de facto* agent of the Authority. If we accept that allegation as true, as we must, for the purpose of these proceedings, then we must decide if the claims against the Authority can withstand a dismissal attack.

The Authority's main defense is that the plaintiffs and the owners lack a cause of action against it pursuant to 23 LPRA 2303(b) which is part of the Dock and Harbor Act of Puerto Rico.

The power of the Commonwealth of Puerto Rico to regulate and control activities in its own harbors and navigable waters, by way of laws and regulations, seems clear to us and cannot be questioned. *Guerrido v. Alcoa*, 234 F.2d 349 (1st Cir. 1956); *Fonseca v. Prann*, 282 F.2d 153 (1st Cir. 1960), cert. denied, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822; *Hanover Insurance Co. v. Liberian Oceanway Corp.*, 398 F.Supp. 104, 108 (D.C.P.R.1975). See also Jones Act, 39 Stat. 951, 954, 964.

23 LPRA Section 2303(b) provides that:

"The damages caused through the action or omission of the Administrator or of any officer, employee or agent of the Authority, while acting in his official capacity and within the scope of his function, employment or commitment as an agent of the government of the Commonwealth of Puerto Rico under the provisions of this chapter (in contraposition as when acting in the exercise of the property rights of the Authority as a public corporation) intervening fault or negligence, *shall exclusively be requirable to the Commonwealth of Puerto Rico as provided by law.*" (Emphasis added)

With the above in mind, and accepting as correct the allegation to the effect that Montes was a *de facto* agent or employee of the Authority, we must dismiss the claims against the Authority, since as provided by Section 2303(b) *supra*, those damages are recoverable only from the Commonwealth of Puerto Rico.

Following the same reasoning, any damages caused as a result of the Authority's failure to compel the pilot to post a bond as required by 23 LPRA Section 2405 and its alleged failure to provide an adequate and safe berthing facility are also recoverable from the Commonwealth of Puerto Rico exclusively and not directly from the Ports Authority.

We thus conclude that the Ports Authority is not a proper defendant in the instant action and its motion to dismiss must be granted. Consequently, plaintiffs' claim

and the owners' cross-claims are dismissed as to the Authority.

Codefendant Montes also seeks dismissal of the claim against him. First, he alleges that certain exculpatory clauses required by the Authority, which we will discuss presently, are in the interest of public policy and a legitimate exercise of the police power of the government of Puerto Rico. Second, claiming a waiver he also alleges that his pilot's ticket was signed by the Captain after the alleged grounding and allision. He claims that the ticket was not signed under protest or in any other way to denote dissatisfaction with the pilot's performance. Finally, he alleges that his pilotage performance was never questioned and that he was subsequently paid without any attempt to deduct for alleged improper services rendered.

 Montes has not called our attention to and we have not been able to find any authority providing that in case of dissatisfaction with the services rendered, the owner of the vessel may refuse payment of the pilotage fee. On the contrary, 23 LPRA 2417 establishes that the pilot fees constitute a lien on the vessel if they are not satisfied. Furthermore, Puerto Rico is a compulsory pilot jurisdiction whereby all alien ships or any ship of the United States navigating under registration are required to obtain the services of a pilot licensed by the Ports Authority before leaving or entering a harbor. See 23 LPRA 2412; *Campos v. Puerto Rico Sun Oil Co.*, 392 F.Supp. 524, 526 (D.P.R.1975), rev'd on other grounds, 536 F.2d 970 (1st Cir. 1976).

By Resolution No. 281 dated November 8, 1977, the Secretary of Public Works approved an amendment to Section 28(b) of Regulation No. 3 which reads as follows:

"(b) When boarding the ship, the pilot shall show his license to the Captain and shall require from him the draught of said ship. The pilot shall take note of the name and draught of the ship in a form that the Authority shall provide to that effect, which form shall also contain a hold harmless clause. Said form shall be signed by the Captain of the ship... If the Captain fails to sign said form the pilot shall not render his services to the ship, and shall be entitled to charge for his services." Resolution No. 281, Article 5.

Pursuant to Resolution 281, the Ports Authority prepared a form (pilot ticket) to be submitted by the pilot to the captain of the vessel which contains the following language:

"Applicant expressly agrees that when the pilot boards such vessel he becomes the borrowed servant of the owners and operator of the vessel assisted in respect to giving orders to any tugs which may be engaged in the assisting services and in respect to the handling of said vessel, and the pilot, nor the Ports Authority, nor the employers, agents, officials, employees, charterers, operators, managers nor administrators thereof shall be liable for any losses, damages, delays or liabilities arising from any negligence incompetence or incapacity of any pilot. The applicant hereby agrees to indemnify and hold harmless the pilot and the Puerto Rico Ports Authority from any and all losses, damages, delays and liabilities whatsoever whether to third party or otherwise arising from the acts or omissions of such person or persons."

Notwithstanding the aforementioned hold harmless and indemnity clause, we cannot agree with the conclusion suggested by Montes.

 In a situation in which a pilot is taken on voluntarily, the doctrine of *respondeat superior* is applicable and the shipowner is responsible for his actions. The vessel is made liable *in rem* for collisions resulting from the pilot's negligence. *Homer Ramsdell Trans. Co., v. Compagnie Generale Transatlantique*, 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155 (1901). However, if the pilotage is compulsory, as in the present case, the *respondeat superior* nexus is broken and thus, the shipowner cannot be held liable for the fault of the pilot. *Homer Ramsdell, supra.* The pilot, of course, is responsible for his own negligence. See Gilmore and Black, *The Law of Admiralty*, p. 520–521.

■ The Dock and Harbor Act of Puerto Rico provides that any pilot who causes damages to another person or to the Authority through negligence in the fulfillment of his duties shall incur in civil responsibility. 23 LPRA 2410. The civil responsibility incurred pursuant to the Act is the liability established in Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA 5141 and 5142. See 23 LPRA 2303. Thus, Montes' argument that the signing of the pilot ticket by the Master and the subsequent payment of the pilotage services operates as a waiver of the pilot's responsibilities, and his claim to the effect that the exculpatory clauses therein immunize him, cannot prosper since contractual exculpation from tort liability is not favored. *Chico v. Editorial Ponce, Inc.*, 101 D.P.R. 759, 778 (1973); *Fairfax Gas & Supply Co., v. Hadary*, 151 F.2d 939 (4th Cir. 1945); *Chicago & N.W. Ry. Co. v. Chicago Packaged Fuel Co.*, 195 F.2d 467 (7th Cir. 1952), *cert. denied*, 344 U.S. 832, 73 S.Ct. 39, 97 L.Ed. 648 (1952). Agreements relieving a person from liability for future negligent acts should be strictly construed against the party relying on them to avoid liability and, if possible, their interpretation should be against exemption. *Cabrera v. Doval*, 76 P.R.R. 728 citing 6 Willinston on Contracts 4966, followed in *Chico v. Editorial Ponce, Inc., supra.* The reasoning supporting this doctrine is that such agreements foster a want of care, for the highest incentive to the exercise of due care rests in a consciousness that a failure in this respect will fix liability to make whole for any injury caused. *Cabrera v. Doval, supra*, at page 731.

■ Although Article 4 of the Civil Code of Puerto Rico, 31 LPRA 4, provides that the rights established by the laws can be waived, such waiver is not valid if it is contrary to law, to public interest or public order, or prejudicial to the interest of a third person. In any event, such waiver must be clear, conclusive and unequivocal. *Quiñones Quiñones v. Quiñones Irizarry*, 91 PRR 217 (1964). The waiver claimed by Montes falls far short from these standards.

In this jurisdiction, if the captain refuses to sign the pilot ticket, the pilot cannot render his services to the ship. See Resolution No. 281, Article 5, *supra*. However, if a pilot is not utilized, the ship cannot enter or leave the harbor, 23 LPRA 2412, and if the ship captain proceeds to enter or leave port without using a pilot licensed by the Authority and without a written permission from the Authority for not using a pilot, he incurs in a misdemeanor punishable by imprisonment for a maximum term of two (2) years or a maximum fine of ten thousand ($10,000) or both. 23 LPRA 2418.

■ This being a "take it or leave it" situation, the shipowner (plaintiff) has no other alternative but to accept the hold harmless clause embodied in the pilot ticket. Clearly, the parties are not on equal footing, nor do they deal at arm's length. Undoubtedly, the bargaining power of each of the contracting parties is a significant factor in the determination of the validity of an exculpatory clause. Summarizing, when both parties to a contract are not in equality of conditions and strength, so that a party is obliged to accept the exemption of liability for negligence of the other party, such a clause exempting from future liability for negligence is void. *Chico v. Editorial Ponce, Inc., supra*, p. 779.

Consequently, we find that the clause subject of the present controversy is not valid in a compulsory jurisdiction such as Puerto Rico. Moreover, said clause is contrary to the provisions of 23 LPRA 2410. *Chico v. Editorial Ponce, Inc., supra.*

WHEREFORE, in view of the foregoing, the Ports Authority's motion to dismiss is hereby GRANTED and plaintiff's claim and the owners cross-claims are dismissed as to the Ports Authority. The motion to dismiss filed by Montes is hereby DENIED.

There being no just reason for delay, the Clerk shall enter judgment dismissing the complaint and the cross-claims against the Ports Authority.

IT IS SO ORDERED.