Dionisio SAINZ GONZALEZ,
Plaintiff, Appellee,

v.

BANCO de SANTANDER–PUERTO
RICO, Defendant, Appellant.

Dionisio SAINZ GONZALEZ,
Plaintiff, Appellant,

v.

BANCO de SANTANDER–PUERTO
RICO, Defendant, Appellee.

Nos. 90–1068, 90–1142.

United States Court of Appeals,
First Circuit.

Heard Aug. 3, 1990.

Decided May 3, 1991.

Ernesto F. Rodriguez Suris for Banco de Santander–Puerto Rico.

Robert E. Schneider, Jr. for Dionisio Sainz Gonzalez.

Before SELYA and CYR, Circuit Judges, and RE,[*] Judge.

CYR, Circuit Judge.

Plaintiff Dionisio Sainz Gonzalez ("Sainz") was granted summary judgment and an award of compensatory damages against Banco de Santander–Puerto Rico ("Banco Santander") for loss sustained when Banco Santander countermanded its cashier's check. Banco Santander appeals. Sainz cross-appeals various district court orders relating to the calculation of compensatory damages and the disallowance of attorney fees and costs.[1]

## I

## BACKGROUND

### Facts

The checking account which Juan Leon Saboya maintained with Banco Santander reflected a zero balance on November 18, 1985, when Saboya simultaneously deposited $100 in cash and a counterfeit cashier's check in the amount of $26,250, purportedly issued by the Old Stone Bank of Providence, Rhode Island. Two days later, plaintiff Sainz presented for payment at Banco Santander a personal check payable to Sainz in the amount of $16,100, and drawn by Saboya on Saboya's checking account with Banco Santander ("Saboya check"). An officer at Banco Santander mistakenly determined that the entire $26,350 deposit made to Saboya's account two days earlier was subject to disbursement, and informed Sainz that the Saboya check could be cashed by a teller. Sainz requested that he be issued a cashier's check instead of cash because he intended to take the proceeds of the Saboya check to Spain. The bank officer then gave Sainz a $16,100 Banco Santander cashier's check ("cashier's check") in exchange for the Saboya check in the same amount.

The cashier's check was deposited in the Banco Guipuzcoano, in Spain, on November 25, 1985, and Sainz' account was credited 2,558,870 pesetas. On the same date, Sainz used the proceeds of the cashier's check, and other funds, to purchase a 4 million peseta certificate of deposit from Banco Guipuzcoano.

Two days later Banco Santander learned that the Old Stone Bank cashier's check was counterfeit and that, consequently, there were insufficient funds in Saboya's account to cover the Saboya check. Three weeks later, on December 18, 1985, Banco Santander stopped payment on the cashier's check. On December 20, Banco Santander notified Banco Guipuzcoano of the stop payment order. On February 7, 1986, Banco Guipuzcoano cancelled Sainz' 4 million peseta certificate of deposit, seized 2,558,870 pesetas of the proceeds, and issued Sainz a certificate of deposit in the net amount of 1,441,130 pesetas.

### District Court Proceedings

The Sainz complaint asserted claims against Banco Santander for libel and for wrongful issuance of the stop payment order on its cashier's check. Sainz demanded compensatory and punitive damages.[2] The parties filed cross-motions for summary judgment on the stop payment claim. The district court ruled that the stop payment claim turned on whether Banco Guipuzcoano was a holder in due course at the time it presented the cashier's check for payment.

---

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

[1]. The cross-appeal asserted other claims, which were withdrawn at oral argument.

[2]. Sainz later abandoned his appeal from the order dismissing the libel claim.

Under Puerto Rico choice of law rules, the court determined that Spanish law would govern the holder in due course issue, and directed the parties to brief relevant Spanish law.

The district court later granted partial summary judgment against Banco Santander on all liability issues relating to the stop payment order. 702 F.Supp. 26. The court abandoned the "holder in due course" analysis, on the ground that Puerto Rico law treats a cashier's check as "more of a cash equivalent than an ordinary negotiable instrument." The court instead analyzed the stop payment claim in terms of Banco Santander's restitutionary rights against Sainz under Puerto Rico law. The court concluded that Banco Santander had no right to restitution from Sainz, since Sainz presented the Saboya check in good faith and the cashier's check was issued as a result of Banco Santander's mistaken belief that there were sufficient funds in Saboya's account to cover the Saboya check. Sainz obtained an award of compensatory damages in the amount of $16,100, with interest from the date of the commencement of the action. These appeals followed.

## II

### DISCUSSION

#### 1. Appeal of Banco Santander

On appeal, Banco Santander argues that the validity of the stop payment claim depends on the sufficiency of the consideration for the cashier's check, rather than the bank's restitutionary rights. Banco Santander points to dicta in *Herrera v. First Nat. City Bank*, 103 D.P.R. 724, 103 P.R.R. 1004 (1975), that a cashier's check issued without consideration may be countermanded.[3] Banco Santander contends that its cashier's check was issued without consideration, since it was issued in exchange for the Saboya check, which was all but worthless.

As only issues of law are presented on appeal, our review is plenary. *See LoVuolo v. Gunning*, 925 F.2d 22, 25 (1st Cir. 1991) (citing *Thrifty Rent–A–Car–System v. Thrift Cars, Inc.*, 831 F.2d 1177, 1181 (1st Cir.1987)).

Neither the district court nor the parties have discovered Puerto Rico decisional law limning the rights of a bank to countermand its cashier's check, and we have met with no greater success. A diversity court faced with a paucity of apposite decisional law may look to " 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending to convincingly show how the highest court [in the relevant jurisdiction] would decide the issue at hand.' " *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 903 (1st Cir.1988) (*en banc*) (citation omitted), *cert. denied*, 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989). Moreover, we may advert to expressions of public policy by the highest court of the relevant jurisdiction and to the decisional law of other fora. *See Ryan v. Royal Ins. Co. of Amer.*, 916 F.2d 731, 734–35 (1st Cir.1990). These considerations persuade us that the district court arrived at the same result that the Supreme Court of Puerto Rico would reach in the present case.[4]

The *Herrera* statement—that a bank may countermand a cashier's check issued without consideration—is not "considered dicta." *See Redgrave*, 855 F.2d at 903. Under the *Herrera* holding, a bank cannot delay crediting its depositor's account for the amount of a cashier's check on the

---

**3.** The Supreme Court of Puerto Rico identified certain features which make cashier's checks unique:

> The cashier's check is one in which the very bank which issues it is drawer and drawee. Upon issuing it, the bank guarantees that the funds represented by the check have been reserved for the benefit of the purchaser. The payment is not subject to countermand although there are exceptional situations in which they may be countermanded as are the cases of fraud or when they have been issued without consideration.

*Herrera*, 103 P.R.R. at 1010 (citations omitted).

**4.** Of course, we undertake *de novo* review of the district court's state-law determination. *Salve Regina College v. Russell*, —— U.S. ——, ——, 111 S.Ct. 1217, 1223–25, 113 L.Ed.2d 190 (1991), *rev'g* 890 F.2d 484 (1st Cir.1989).

same contractual basis as it might a personal check, because in the commercial world cashier's checks function as "cash equivalents." *Herrera*, 103 P.R.R. at 1011. *Herrera* presented no occasion for the Supreme Court of Puerto Rico to consider or determine, let alone analyze in detail, in what circumstances, if any, a bank may stop payment on its cashier's check. *See Daigle v. United States*, 181 F.2d 311, 314 (1st Cir.1950) (dicta not "considered," absent "detailed analysis" of issue to which dicta speak); *In re Air Crash Disaster Near Chicago*, 701 F.2d 1189, 1196 (7th Cir.) (dicta not "considered," where rationale is not articulated and unanimity of authority for dicta has eroded), *cert. denied*, 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *Manalis Finance Co. v. United States*, 611 F.2d 1270, 1273 (9th Cir.1980) (dicta not "considered," when "not intended to be a definitive resolution" of issue).[5]

Next we look to pertinent judicial expressions of Commonwealth policy, *see Ryan*, 916 F.2d at 734–35, which, we reasonably may assume, the Supreme Court of Puerto Rico would implement in the form of consistent decisional law should the opportunity for a considered determination arise, *see Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 116 (1st Cir.1988) (citation omitted), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). *Herrera* clearly delineated Commonwealth policy anent cashier's checks: cashier's checks are to be "received with the confidence and security with which paper money

is received," the function of cashier's checks being to eliminate "the inconveniences of paper money." *Herrera*, 103 P.R.R. at 1011. *See also Hato Rey Electroplating, Inc. v. Rodriguez*, 114 D.P.R. 236, 244, 114 P.R.R. 305, 315 (1983).

The Commonwealth policy articulated in *Herrera* bears particular relevance to the circumstances in the case at bar. Sainz accepted the cashier's check, rather than cash, in payment of the Saboya check, precisely because utilization of the cashier's check avoided the risk and inconvenience involved in transporting large sums of cash on his person. Had Sainz accepted cash, and then purchased the cashier's check, it would be difficult to conceive a viable "failure of consideration" defense. *See, e.g., Munson v. American Nat. Bank & Trust Co. of Chicago*, 484 F.2d 620, 624 (7th Cir.1973) (applying Illinois law). The commercial convenience and safety afforded by cashier's checks, as extolled by the Supreme Court of Puerto Rico in *Herrera*, 103 P.R.R. at 1011, would be subverted, without commercial purpose, were Banco Santander permitted to countermand its cashier's check merely because Sainz received the cashier's check as direct payment for the Saboya check, instead of insisting on an intermediate exchange for cash.

Similar commercial policy considerations have persuaded courts in other jurisdictions to conclude that a bank may not countermand its cashier's check once it has been delivered. *See Ryan*, 916 F.2d at 734–35

---

**5.** It is unclear in any event that the *Herrera* dictum would work a result favorable to Banco Santander. Courts applying a "consideration test" in circumstances similar to the present have gone both ways on the issue. More recent decisions favor the holder of the cashier's check, rather than the issuing bank. *Compare Banco Ganadero y Agricola, S.A. v. Society Nat. Bank of Cleveland*, 418 F.Supp. 520, 526 (N.D.Ohio 1976) (consideration adequate, where bank mistakenly issued cashier's check in reliance on amount in payee's account with issuing bank, which contained insufficient funds to cover cashier's check); *Bossuyt v. Osage Farmers Nat. Bank*, 360 N.W.2d 769, 775 (Iowa 1985) (same); *Neve Welch Enter., Inc. v. United Bank*, 628 P.2d 1295, 1296 (Utah 1981) (consideration sufficient where bank mistakenly issued cashier's check to

payee in reliance on third-party depositor's subsequently-withdrawn promise to pay bank for cashier's check); *Rezapolvi v. First Nat. Bank of Maryland*, 296 Md. 1, 459 A.2d 183, 190–91 (1983) (consideration sufficient for cashier's check mistakenly issued in payment of personal check drawn on issuing bank and bearing an unauthorized signature), *with Mine & Smelter Supply Co. v. Stock Grower's Bank*, 200 F. 245 (8th Cir.1912) (failure of consideration where cashier's check mistakenly issued in payment of "insufficient funds" check drawn on maker's account at issuing bank); *Dakota Transfer & Storage Co. v. Merchants Nat. Bank & Trust Co.*, 86 N.W.2d 639, 644 (N.D.1957) (same); *National Bank of Calif. v. Miner*, 167 Cal. 532, 140 P. 27 (1914) (same).

(relevance of decisions in other fora). The Seventh Circuit was presented with an analogous case in *Munson, supra,* which involved a bank's attempt to countermand its cashier's checks when the draft tendered as consideration was dishonored. The court held that the bank could not stop payment, as "[d]ishonor of the $80,000 draft gave ... [the bank] no more right to countermand its cashier's checks than ... to refuse to pay cash it had already paid." 484 F.2d at 624. *See also Kaufman v. Chase Manhattan Bank, N.A.,* 370 F.Supp. 276, 278–279 (S.D.N.Y.1973) (applying New York law); *State ex rel. Chan Siew Lai v. Powell,* 536 S.W.2d 14, 16 (Mo.1976) (*en banc*); *National Newark & Essex Bank v. Giordano,* 111 N.J.Super. 347, 268 A.2d 327, 328 (1970) ("The [cashier's check] transaction is not executory, but rather an executed transaction of purchase and sale.").[6]

In view of these considerations, we conclude that the Supreme Court of Puerto Rico would not recognize a legal right on the part of Banco Santander to countermand its cashier's check in the circumstances of the present case.

### 2. Sainz' Cross-appeal

*Calculating Damage Award*

The principal claim raised by the Sainz cross-appeal is that the district court erroneously refused to calculate damages in pesetas and convert the award into dollars at the exchange rate prevailing on the date judgment was entered.[7]

■ Since Sainz lost 2,558,870 *pesetas* when Banco Santander countermanded its cashier's check, we agree that compensatory damages should have been calculated in pesetas as at February 7, 1986, *e.g., In re Good Hope Chemical Corp.,* 747 F.2d 806, 809 (1st Cir.1984) (calculating damages in German marks where defendant breached contract to deliver marks), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985), rather than in the dollar amount of the cashier's check issued weeks earlier.

We cannot agree, however, that it would have been appropriate to convert pesetas to dollars at the exchange rate prevailing on the date of judgment.[8] We have held that

6. Other courts which hold that a bank may not countermand its cashier's check include: *Swiss Credit Bank v. Virginia Nat. Bank–Fairfax,* 538 F.2d 587, 588 (4th Cir.1976) (*per curiam*) (cashier's check may not be countermanded, as it is accepted in advance by the act of its issuance); *Da Silva v. Sanders,* 600 F.Supp. 1008, 1013–14 (D.D.C.1984) (same; public policy and equity considerations); *Meador v. Ranchmart State Bank,* 213 Kan. 372, 517 P.2d 123, 128 (1973) (cashier's check is substitute for money represented by check and may not be countermanded); *Wertz v. Richardson Heights Bank & Trust,* 495 S.W.2d 572, 574 (Tex.1973) (because cashier's check is accepted upon issuance, bank is precluded from stopping payment); *Yukon Nat. Bank v. Modern Builders Supply, Inc.,* 686 P.2d 307, 309 (Okl.App.1984) (same); *Citizens & Southern Nat. Bank v. Youngblood,* 135 Ga.App. 638, 219 S.E.2d 172, 173 (1975) (issuance of cashier's check in payment of personal check drawn on issuing bank is equivalent to payment in cash, "without any reservation of the right to revoke settlement") (dicta).

Decisions permitting countermand of a cashier's check, albeit in circumstances distinguishable from the present case, include: *Farmers & Merchants State Bank v. Western Bank,* 841 F.2d 1433, 1451 (9th Cir.1987) (bank allowed to dishonor its cashier's check where holder did not take check in good faith or without notice of defenses; court did not analyze whether holder

took for value); *Hotel Riviera, Inc. v. First Nat. Bank & Trust Co.,* 768 F.2d 1201, 1203 (10th Cir.1985) (rejecting "failure of consideration" defense where holder of cashier's check neither participated in nor knew of fraud relating to issuance of check); *TPO, Inc. v. FDIC,* 487 F.2d 131, 136–37 (3d Cir.1973) (bank may stop payment to payee of cashier's check, where payee fraudulently induced issuance of check); *International Furniture Distributors, Inc. v. First Georgia Bank,* 163 Ga.App. 765, 294 S.E.2d 732 (1982) (bank permitted to countermand cashier's check issued in payment of personal check drawn on bank, where bank failed to notice that payment had been stopped on personal check). *See generally* Annotation, *Bank's Right to Stop Payment on Own Check* § 3, 97 A.L.R.3d 714, 718–26 (1980 and Supp.1990).

7. After Sainz deposited the cashier's check, the Spanish peseta increased in value as against the dollar. *See infra* note 9.

8. Although financial loss may, of course, be incurred in any currency, "'[i]t is a settled principle of Anglo–American law that judgments for money damages must be *rendered* in the currency of the forum.'" *In re Good Hope,* 747 F.2d at 809 (quoting Note, *Conversion Date of Foreign Money Obligation,* 65 Colum.L.Rev. 490 (1965)) (emphasis added).

compensatory damage awards for losses incurred in a foreign currency are to be converted into U.S. dollars at the exchange rate prevailing on the date judgment is entered only if the entire cause of action arose under foreign law. Otherwise, damages are to be converted to dollars at the exchange rate prevailing on the "breach day"—that is, the day the cause of action accrued. *Id.* at 811.

Notwithstanding that the district court applied Puerto Rico law only, and that the parties argue only Puerto Rico law on appeal, Sainz insists that his cause of action arose entirely under Spanish law. He states, without explication, that since he sustained the loss in Spain, the cause of action arose under Spanish law; according to Sainz, the district court and the parties looked to Puerto Rico law only because Spanish "choice of law" rules directed application of the substantive law of Puerto Rico. There is no basis for Sainz' *ipse dixit*. Rather, applying Puerto Rico "choice of law" rules, the district court was directed to Spanish law only on the issue of Banco Guipuzcoano's status as a "holder in due course," and ultimately did not address this issue. The attempt to characterize Sainz' cause of action as one arising entirely under Spanish law is baseless.

Sainz correctly contends that damages should have been calculated in pesetas and converted into dollars. Under the "breach day" rule, *see In re Good Hope*, 747 F.2d at 811, Sainz' loss of 2,558,870 pesetas should have been converted to dollars at the exchange rate prevailing on February 7, 1986, the date the Sainz certificate of deposit was cancelled as a result of Banco Santander's countermand of its cashier's check.[9]

### "Obstinacy" Claim

 Sainz demands an award of attorney fees, on the theory that Banco Santander's insistent assertion of a legal right to countermand its cashier's check amounted to "obstinacy" under Puerto Rico law. *See* Puerto Rico R.Civ.P. 44.1(d) ("Where a party has been obstinate, the court shall in its judgment impose ... attorney's fees.").[10] We review the district court's denial of attorney fees under rule 44.1(d) for abuse of discretion. *See Puerto Rico Maritime Shipping Auth. v. Crowley Towing & Transp. Co.*, 747 F.2d 803, 806 (1st Cir. 1984). The district court acted well within its discretion in disallowing an award of attorney fees under rule 44.1(d). *See Rodriguez v. John Hancock Mut. Life*, 110 D.P.R. 1, 110 P.R.R. 1, 11 (1980) (insurer "not obstinate in litigating an issue not previously dealt with in our jurisdiction").[11]

### III

### CONCLUSION

*For the foregoing reasons, the district court judgment is amended to provide an award of compensatory damages to cross-appellant in the amount of $16,939.72, with interest from the commencement of the action. In all other respects, the district court judgment is affirmed; Dionisio Sainz Gonzalez is awarded one half of*

---

9. On February 7, 1986, the Spanish peseta was trading at .006620 dollars to the peseta. N.Y. Times, February 8, 1986, at 42. Thus, Sainz should have been awarded $16,939.72 (2,558,870 × .006620) in compensatory damages.

10. The Puerto Rico Rules of Civil Procedure apply to attorney fee awards in diversity cases governed by Puerto Rico law. *Marshall v. Perez Arzuaga*, 828 F.2d 845, 852 n. 10 (1st Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988).

11. The district court did not rule on Sainz' request for reimbursement of expenses incurred as a result of Banco Santander's eleventh-hour request for a continuance of the trial. On ap-

peal, Sainz devotes a single conclusory sentence to this claim: "[t]hese expenses were caused by Banco Santander's last minute continuance of the trial set for April 21, 1989 and there is no reason for not awarding Sainz the amounts claimed in his motion." Sainz' claim that the district court erred in not awarding punitive damages, even though the jury refused to do so, is similarly undeveloped. We deem these claims waived. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), *cert. denied*, —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

*the costs of his consolidated brief; no costs to either party in No. 90–1142.*