**Eduardo Melo ORTIZ; Celeste Nuñez De Melo, and the conjugal partnership formed by them, Plaintiffs,**

**v.**

**BANCO POPULAR de PUERTO RICO, Defendant and Third–Party Plaintiff,**

**v.**

**The UNITED STATES of America, Third–Party Defendant.**

Civil No. 94–2303 (JAF).

United States District Court, D. Puerto Rico.

July 24, 1996.

Luis G. Rullan, Limeres, Vergne, Duran & Rullan, San Juan, PR, for plaintiff.

Ramon E. Melendez Castro, Martinez, O'Dell & Calabria, San Juan, PR, Pedro J. Cordova, San Juan, PR, for defendant Bank.

**30**

Fidel A. Sevillano–Del Rio, Asst. U.S. Attorney, Guillermo Gil, U.S. Attorney, San Juan, PR, for third-party defendant.

### OPINION AND ORDER

FUSTE, District Judge.

#### I.

On October 4, 1994, plaintiffs, Eduardo Melo Ortiz, his wife Celeste Núñez de Melo, and the conjugal partnership formed between them, brought suit against defendant, Banco Popular de Puerto Rico, for damages arising from the bank's countermand of two cashier's checks that it had issued on October 7, 1993. *Docket Document No. 1.* Plaintiffs have since filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *Docket Document No. 8.* For its part, defendant seeks summary judgment. *Docket Document No. 12.* After careful review of these motions, the complaint, the law of this Circuit, Commonwealth law, and such evidentiary support as the parties have adduced, we deny both plaintiffs' motion for judgment on the pleadings and defendant's motion for summary judgment.

#### II.

In what was clearly a currency exchange agreement, Melo agreed with Mr. Valerio Abad de la Cruz to provide one million Dominican pesos for two checks, collectively in the amount of 80,000 United States dollars, each drawn on Abad's account with defendant. On October 7, 1993, Melo took Abad's checks to Banco Popular where, for a fee, he exchanged Abad's checks for two cashier's checks issued by defendant's employee, Mr. Nelson Cardona. Cardona was careful to check that Abad's account contained sufficient available funds to cover the checks. Later that same day, Special Agent T. Becerra, of the Federal Bureau of Investigation, warned another division of the bank of a federal investigation regarding the source of funds in Abad's account and had, as defendant alleges, requested Banco Popular not to honor transactions chargeable to Abad's account. On that same day, defendant debited Abad's account in the amount of the issued cashier's checks and plaintiff deposited the cashier's checks with Banco Bilbao Vizcaya (BBV). BBV immediately credited Melo's account and submitted the checks to defendant for payment.

The following day, defendant stamped its cashier's checks as if they had been honored and paid, but before the funds had actually been transferred, it countermanded the checks. Having been refused payment, BBV debited Melo's account on the Ninth of October.

Melo received notice of the countermand on October 14, 1993. When Melo sent Mr. Simón Bolivar Vargas, acting as his agent, to Banco Popular for an explanation of the countermand, defendant confiscated the checks. It was not until the following day, however, that FBI Special Agent Becerra finally procured a warrant for seizure of the cashier's checks. The funds represented by the two checks were then held by the United States until July 29, 1994, when Melo entered into an agreement with the United States. The agreement provided that the $80,000, plus a $5,000 cost bond, would be given to Melo in exchange for a waiver of all claims, demands, rights, and causes of action against the United States arising from the seizure.

Though the funds represented by the checks were ultimately returned, plaintiffs now claim to have suffered some $5,560,000 of damage in lost profits and pain and suffering occasioned by injury to reputation and commercial standing, and other expenses associated with recovery of the money. It is upon these damages that plaintiffs bring suit.

#### III.

Plaintiffs seek judgment on the pleadings, arguing that *Sainz González v. Banco de Santander–Puerto Rico,* 932 F.2d 999 (1st Cir.1991), decides that, under Commonwealth law, a bank may not countermand a cashier's check once issued. In its motion for summary judgment, defendant takes issue with the plaintiffs' reading of *Sainz.* Defendant claims that *Sainz* does not prohibit a bank from issuing an order of countermand where (1) the party to whom the bank has issued its cashier's check is not a "holder in due

course" or (2) the consideration upon which the bank issued the cashier's check fails. Defendant alleges that plaintiffs' case falls into both of the argued exceptions to *Sainz*.[1]

In the alternative, defendant takes issue with the holding of *Sainz*, arguing that both the District Court and the Court of Appeals misread *Hato Rey Electroplating, Inc. v. Rodríguez*, 114 P.R.R. 305 (1983), and *Herrera v. First Nat. City Bank*, 103 P.R.R. 1004 (1975), the two Commonwealth cases upon which both federal courts predicated their decisions. Defendant requests, therefore, that we certify this question of law to the Supreme Court of Puerto Rico.

Defendant also claims that, in waiving their right to sue the United States, plaintiffs have relinquished their claims against all joint tortfeasors. In support of this claim, defendant has filed a third-party complaint against the United States, arguing that the United States is responsible for plaintiffs' alleged damages. Apparently in the alternative, defendant argues that, to the extent both parties are found to have contributed to plaintiffs' injury, defendant should bear liability only for damages accruing between the Eighth of October and the Fifteenth, when the government issued its seizure warrant.

Finally, pursuant to Fed.R.Civ.P. 12(b)(7), defendant claims that, in order to proceed, the court must join BBV as a Rule 19(b) indispensable party. Defendant contends that, when BBV debited Melo's account after defendant had refused to honor the cashier's checks, BBV joined defendant as a tortfeasor. Since BBV "is primarily and directly responsible to plaintiffs," claims defendant, "only BBV, if held responsible to plaintiffs, would have a valid and direct claim against BPPR." *Docket Document No. 12, p. 13.*

### IV.

As we have noted, plaintiffs' motion for summary judgment relies on *Sainz González v. Banco de Santander–Puerto Rico, supra,* for the proposition that a bank may not normally countermand a cashier's check once issued. In *Sainz,* the plaintiff brought suit against Banco Santander for refusing to honor a cashier's check that it had issued. Acting in good faith, Sainz had purchased the cashier's check by signing over the personal check of Santander depositor Saboya. The bank officer who authorized the cashier's check mistakenly considered "unposted items" in Saboya's account as available funds. When Santander discovered that the unposted item in Saboya's account was a counterfeit check that would not be honored, it stopped payment on the cashier's check that it had issued to plaintiff. Plaintiff brought suit for damages occasioned by the countermand.

The district court found Santander liable, concluding that the general rule of restitution, as codified in Article 1895 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5121, does not provide a right of restitution against the owner of a cashier's check issued on the bank's mistaken belief that adequate funds exist in the account of the bank's depositor to support the draft with which the cashier's check is procured. In reaching this conclusion, the court relies heavily upon North American banking law to fill the gaps that exist in Commonwealth banking law.

On appeal, Santander argued that the validity of the countermand depends on the sufficiency of the consideration for the cashier's check, rather than the bank's restitutionary rights. *Sainz,* 932 F.2d at 1001. The Court of Appeals for the First Circuit rejects this argument, refusing dicta from the Supreme Court of Puerto Rico not deemed "considered," and looking, instead, to policy considerations that would presumably guide the Commonwealth court were it to address the issue. *Id.* at 1001. While dicta contained in *Herrera* states that exception to the rule against countermand exists where there has been either fraud or a failure of consideration, the Court of Appeals concludes that, as *Herrera* presented no occasion to determine the circumstances under

---

1. We note, in passing, that the fact that the currency exchange agreement may have violated Dominican banking law would not likely preclude Melo or BBV from becoming holders in due course where we have no indication that

Melo knew at the time that he purchased the cashier's checks that the U.S. government had ordered or would order the bank to dishonor transactions on Abad's account.

which countermand would be justified, the matter effectively remains unresolved by the Commonwealth courts. *Id.* at 1002. The court then notes that *Herrera* itself recognizes a countervailing public policy concern that cashier's checks are to be "received with the confidence and security with which paper money is received," the function of cashier's checks being to eliminate "the inconvenience of paper money." *Id.* (quoting *Herrera,* 103 P.R.R. at 1011).

■ *Sainz* is undoubtedly the law of this Circuit and, without rehearsing the argument contained therein, we merely note that we believe it to have been correctly decided. Accordingly, we reject defendant's claims predicated on the alleged "failure of consideration" or absence of a "holder in due course." Moreover, in refusing to overlook a bank's countermand, even in cases of fraud or failure of consideration, we understand the Court of Appeals to have placed Puerto Rico among those jurisdictions that deem a cashier's check accepted by the act of issuance. Thus, even had law-enforcement authorities actually issued an order to dishonor drafts chargeable to Abad's account before the bank had transferred funds from Abad's account to its own, the law does not relinquish the bank from its obligation to honor the cashier's check issued to Melo. Should Melo or Abad have been responsible for the failure of consideration or fraud, defendant might well have brought suit against the wrongdoer; but defendant may not, at its choosing, craft its own remedy by allocating away the risk of fraud or failure of consideration to one or the other party. Such a practice, if permitted, would contravene the public policy that underlies the "cash equivalency" of cashier's checks.

### V.

Defendant also claims that, in waiving their right to sue the United States, plaintiffs have relinquished their claims against defendant. In support of this proposition, defendant cites *Merle v. West Bend Co.,* 97 P.R.R. 392 (1969), for the proposition that waiver of claims against one joint tortfeasor, automatically relinquishes all claims against other joint tortfeasors unless right to these claims

is somehow preserved. Defendant argues that in reaching an agreement whereby plaintiffs waived their right of suit for return of the money seized, plaintiffs failed to expressly or inferentially preserve their right of action against defendant. This approach either misreads or misunderstands the holding of *Merle.*

■ *Merle* rather clearly breaks from the English Common Law rule for which it is cited by defendant, holding, instead, that there must be some affirmative indication, either in the plaintiff's actions or the waiver of claim, that plaintiff intends, thereby, to relinquish its right of action against joint tortfeasors. *Id.,* at 398. While defendant does correctly note that the stipulation agreement signed by plaintiffs with the United States government makes no mention of rights against defendant or other joint tortfeasors, under *Merle,* we must take this fact only as evidence that plaintiffs intended no waiver of rights against joint tortfeasors. Finding no evidence in plaintiffs' actions to support the argument of waiver, we reject defendant's argument that the stipulation agreement released defendant from liability for countermand of its cashier's checks.

### VI.

Next, defendant argues that it may be held liable for damages arising from countermand only if we join, and find culpable, BBV, the last entity to have signed the cashier's checks. The claim comes perilously near frivolity. First, we note, without deciding, that BBV is not likely to have incurred liability in debiting Melo's account when defendant dishonored its cashier's checks any more than it would have had the checks proven counterfeit, for the terms upon which a cashier's check is accepted for deposit are almost certainly nowhere near as absolute as those upon which it is issued. That defendant, a sophisticated banking institution, would in good faith suppose otherwise strikes us as highly improbable.

■ Second, and more importantly, defendant errs in supposing that BBV is an indispensable party under the federal law of joinder. Puerto Rico follows the rule that

tortfeasors who indivisibly contribute to a plaintiff's injury will be held jointly and severally liable. *See Lacombe v. Manpower, Inc.,* 109 F.R.D. 350 (D.P.R.1986) (citing *Hanover Ins. Co. v. Liberian Oceanway Corp.,* 398 F.Supp. 104 (D.P.R.1975)). Under governing federal procedural law, joinder of jointly and severally liable tortfeasors is permissive, not mandatory. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Intern., Inc.,* 982 F.2d 686, 691 (1st Cir.1993) (citing *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990)). And, of course, failure to join a person does not constitute a Rule 12(b)(7) defense unless Rule 19(b) makes joinder mandatory.

■ Defendant alleges that, when Melo deposited the cashier's checks, BBV became their owner and the only party entitled to bring suit for defendant's countermand. Even if BBV had breached the terms upon which it accepted the cashier's checks for payment, defendant, having allegedly breached the terms of the agreement represented by the cashier's checks themselves, would remain a joint tortfeasor.[2] Under these circumstances, joinder of BBV remains permissive and cannot, therefore, constitute a Rule 12(b)(7) defense.

## VII.

■ On April 29, 1996, having reviewed the case, we ordered that the parties depose FBI Special Agent Becerra, in order to determine whether or not he had ordered the bank to dishonor the cashier's checks that defendant had issued. Special Agent Becerra explained during his deposition, held May 24, 1996, *Docket Document No. 34,* that, though he had warned the bank of his investigation on October 7, 1993, he did not order the bank to countermand its cashier's checks because he knew that he lacked the authority to do so without the appropriate warrant. *Id.,* pp. 19–21, 68. Left uncontested, this testimony would require judgment in favor of plaintiff. Having gone beyond the pleadings, however, we must afford defendant the op-

portunity to challenge or refute Special Agent Becerra's testimony. Thus, we have identified two issues suitable only for the triers of fact: (1) whether or not Special Agent Becerra ordered Banco Popular to refuse payment on its cashier's checks, and (2) what damages, if any, this caused to plaintiffs. Accordingly, we deny plaintiffs' motion for judgment on the pleadings and defendant's motion for summary judgment.

**IT IS SO ORDERED.**

---

**2.** Similarly, even if the damages sustained by plaintiffs were partially the product of actions taken by the United States government, the defendant would remain a joint tortfeasor, jointly and severally liable for the full spectrum of damages suffered by plaintiffs.