Fremont-Smith, Thayer, J.
Plaintiff Weitman brings this action individually and as a purported class action on behalf of all persons, other than defendants and their affiliates, who own stock of Perini and are similarly situated (the “Class”), for injunctive relief and/or for other available damages. Plaintiff seeks injunctive relief, inter alia, to enjoin a proposed transaction whereby Perini has agreed to purchase Tutor-Saliba Corporation (“Tutor-Saliba”), a private company which is 95% owned and controlled by defendant Ronald N. Tutor (“Tutor”), Perini’s current Chairman and Chief Executive Officer (“CEO”), pursuant to a stock swap valued at approximately $862 million (the “Merger” or “Proposed Transaction”).[3] Alternatively, in the event that the Proposed Transaction is completed, plaintiff seeks to recover damages caused by the breaches of fiduciary duties hereinafter alleged.
Under the terms of the Agreement and Plan of Merger (the “Merger Agreement”) dated April 2, 2008, as amended, in exchange for Perini’s receipt of all of the outstanding stock of Tutor-Saliba, Tutor-Saliba will receive a total of22,987,293 shares of Perini common stock representing approximately 45% of the outstanding Perini common stock[4] following the completion of the transaction. The proposed Merger has been approved by Perini’s Board of Directors but requires the approval of Perini’s common stockholders.
Plaintiff, who owns seventeen shares of Perini stock, seeks to enjoin the vote on this Merger on the basis that the Board of Directors of Perini breached their fiduciary duties by approving the Merger although they knew it would transfer some ownership and control to defendant Tutor and Tutor-Saliba, and unfairly dilute Perini shareholders’ ownership and voting power for an inadequate price. Plaintiff also alleges that the process undertaken by the Board was inadequate because it failed to consider potentially superior alternative transactions. In addition, the timing of the transaction is allegedly suspect since the execution of the Merger Agreement comes on the heels of the January announcement by Perini that the developer of its Cosmopolitan Resort & Casino project in Las Vegas defaulted on its $760 million construction loan, which caused Perini’s shares to tumble 26.9% to $27.56.
With the shareholder vote on the Merger scheduled to take place on September 5, 2008, Weitman now moves for expedited discovery.
The question presented in determining the appropriateness of expedited proceedings is “whether in the circumstances the plaintiff has articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury, as would justify imposing on the defendants and the public the extra (and sometimes substantial) costs of an expedited proceeding.” Giammargo v. Snapple Beverage Corp., 1994 WL 672698, *2 (Del.Ch. Nov. 15, 1994). In cases where there is no demonstrable need for the remedy of preliminary injunction, courts generally decline to impose the costs and disruption associated with expedited proceedings. Id.
Failure to Test the Market
Plaintiff alleges that defendants have failed to test the market for the best sales price by means of an auction or otherwise, but instead have relied upon a single appraisal by a consultant. However, no case has been called to the Court’s attention which imposes upon directors of a company which is acquiring and swapping shares, as is the case here (as opposed to seeking to sell its own shares to an acquiring company), to shop around or hold an auction to determine the best market price for its shares. Where, as here, Tutor-Saliba Corporation had recently announced its intention to “go public,” and Perini’s developer of a major project has recently gone into default, Perini’s Board of Directors could, in the exercise of their legitimate business judgment, have concluded that it was better to join with Tutor-Saliba Corporation rather than try to compete with it. See G.L.c. 156D, §8.30; Harhen v. Brown, 431 Mass. 838, 845 (2000).
With respect to the allegations as to a deficiency of the proxy statement, although a shareholder’s right to make an informed vote may, in some circumstances, provide a basis for injunctive relief because a substi-tutional damages remedy would be inadequate; see Eisenberg v. Chicago Milwaukee Corp., 537 A.2d 1051, 1062 (Del.Ch. 1987); Sealy Mattress Co. of New Jersey, Inc. v. Sealy, Inc., 532 A.2d 1324, 1342 (Del.Ch. 1987); plaintiff here has not demonstrated a likelihood she will be able to establish that the preliminary proxy is deficient in such a way that would prevent shareholders from being able to make an informed vote.
*344 The final proxy statement, after several redrafts and revisions, was approved by the Securities Exchange Commission on August 6, 2008. Where, as here, there is an absence of specific factual allegations as to any proxy deficiency, approval by the SEC is a particularly persuasive indication that the proxy is adequate to permit shareholders to make an informed choice. As Weitman has proffered no substantial evidence that the proxy is deficient in a way that would prevent shareholders from making an informed vote, she has failed to sufficiently articulate a colorable claim of a threat of irreparable harm to shareholders which would justify the imposition of the burden and disruption of expedited proceedings.
Additionally, any harm caused to Weitman personally, if the merger is approved, would not be irreparable for another reason. Should Weitman eventually succeed on her breach of fiduciary duly claims against the various defendants, the Court will be able to fashion a remedy to adequately compensate her for any loss of value of her seventeen shares. See Giammargo, 1994 WL 672698, *3. This case does not present circumstances where, if the merger is approved, a plaintiff will be deprived of her shares and left with a potentially inadequate appraisal remedy. Rather Weitman will retain her shares and, since the thrust of her claim is that the defendants’ alleged breaches of their fiduciary duties in structuring the merger will result in devaluation of her Perini stock, the Court will be capable of crafting a monetary remedy to compensate her for any such devaluation if she is ultimately successful.
The Court also notes the potential harm that could result if the merger is delayed. While Weitman contends that allowing the merger to proceed would damage the value of Perini stock, enjoining the merger vote could have a much more deleterious effect on the value of Perini’s remaining stock. This risk of harm to the thousands of Perini shareholders must be weighed against the possibility of harm to a single shareholder with a small number of shares. In balancing the potential harm to other Perini shareholders against any possible harm to Weitman, the Court declines to impose the burden and disruption of expedited proceedings.
ORDER
For the foregoing reasons and those stated in oral argument and in the memorandum of defendants in opposition to this motion, it is hereby ORDERED that plaintiff Nina Weitman’s Motion for Expedited Proceedings is DENIED.

Plaintiff seeks to enjoin the Merger by enjoining the shareholder vote seeking approval of the Merger. Plaintiff also seeks to enjoin the implementation of two proposals required to complete the Merger: (1) aproposal to approve the issuance of 22,987,293 shares of Perini common stock in the merger contemplated by the Merger Agreement referred to as the “share issuance proposal”: and (2) a proposal to amend Perini’s amended and restated articles of organization to increase the number of authorized shares of Perini common stock from 40 million to 75 million shares, referred to as the “articles amendment proposal.”

According to the Massachusetts Secretary of the Commonwealth’s Corporations Division, Perini currently has over twenty-six million outstanding shares of common stock.