07-3750-cv
Halebian v. Berv

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: February 5, 2009          Decided: December 29, 2009)

Docket No. 07-3750-cv

---------------------------------------

JOHN HALEBIAN,

Plaintiff-Appellant,

- v. -

ELLIOT J. BERV, DONALD M. CARLTON, A. BENTON COCANOUGHER, MARK T. FINN, STEPHEN RANDOLPH GROSS, DIANA R. HARRINGTON, SUSAN B. KERLEY, ALAN G. MERTEN, R. RICHARDSON PETTIT,

Defendants-Appellees,

CITIFUNDS TRUST III,

Nominal Defendant-Appellee.[*]

---------------------------------------

Before:    SACK and PARKER, Circuit Judges, and STANCEU, Judge.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge) dismissing a three-count complaint arising from the renegotiation of certain investment advisory agreements. We reserve decision while certifying to the Supreme Judicial Court of Massachusetts a question as to the circumstances under which

[*] The Clerk of Court is directed to amend the official caption as set forth above.

[**] The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

the business judgment rule may be asserted in response to a shareholder derivative suit under the Massachusetts Business Corporation Act.

Question certified; decision reserved.

JOEL C. FEFFER (Daniella Quitt, James G. Flynn, on the brief) Harwood Feffer LLP, New York, NY, for Plaintiff-Appellant.

JAMES S. DITTMAR, Goodwin Procter LLP, Boston, MA (Michael K. Isenman, Matthew Hoffman, Goodwin Procter LLP, Washington, DC, on the brief) for Defendants-Appellees.

SACK, Circuit Judge:

John Halebian, a shareholder of an investment fund within CitiFunds Trust III ("CitiTrust" or the "Trust"), appeals from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge). The court dismissed his three-count complaint against members of the Trust's board of trustees, the defendants here, in connection with the sale of an adviser of the Trust and the approval of new investment advisory contracts following that sale. Claim One, styled as a derivative claim on behalf of the Trust, alleges that the defendants breached their fiduciary duties to the Trust "in considering the . . . transaction and in recommending the new advisory agreements." Complaint ¶ 54, Halebian v. Berv, No. 06 Civ. 4099 (S.D.N.Y. filed May 30, 2006) (Doc. No. 1) ("Compl."). Claims Two and Three, styled as direct claims, allege that the defendants violated federal and state law by issuing materially

2

false and misleading statements encouraging their shareholders to approve the new investment advisory contracts.

We conclude that we cannot decide the propriety of the district court's dismissal of Count One without resolving a question of Massachusetts law which appears to us to be one of first impression. We think that issue would best be decided by the Massachusetts Supreme Judicial Court in the first instance. Accordingly, we certify that question to the Supreme Judicial Court. Although we are of the view that dismissal of Counts Two and Three was proper, in light of our decision to certify a question to the Supreme Judicial Court in connection with Count One and because our resolution of the propriety of the district court's dismissal of Counts Two and Three also involves the application of Massachusetts law, we think it the more prudent course to reserve judgment in this respect, too, pending the Supreme Judicial Court's response to the question certified.

**BACKGROUND**

The following recitation is based on Halebian's complaint and other documents "integral" to that complaint, see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002), the factual assertions of which, for purposes of this discussion, we assume to be true, see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Halebian is a citizen of New York State. At all relevant times, he owned shares in the Citi New York Tax Free Reserves Fund (the "New York Fund"), one of six "series portfolios," or mutual funds (the "Funds"), contained in the

3

Trust. See Compl. ¶ 7. CitiTrust is a Massachusetts business trust with its principal place of business in Maryland. Id. ¶ 8. CitiTrust is "named as a nominal defendant . . . solely in a derivative capacity." Id. ¶ 9. The actual defendants, none of whom is a New York citizen, are members of CitiTrust's Board of Trustees (the "Board"). Id. ¶¶ 10-19.

The Transaction

On June 23, 2005, Citigroup sold substantially all of its asset management business, including a subsidiary that served as an adviser to CitiTrust, to Legg Mason, Inc. Id. ¶ 32. In connection with this transaction (the "Transaction"), the Funds' existing advisory contracts were terminated and new contracts were executed with the Funds' new advisers, id. ¶ 33, for which the Funds' shareholders' approval was required, id. ¶ 34. In August 2005, the Board approved the Funds' new investment advisory agreements with Legg Mason. Id. ¶ 39. Thereafter, the Board issued a proxy statement to its shareholders describing the advisory agreements and recommending that they vote to approve the new agreements, id. ¶¶ 34-35, which they did, id. ¶ 61.

Two aspects of the Transaction are relevant to this appeal. First, the new advisory agreements authorize the payment of "soft dollars." Id. ¶ 43.[1] As described by the district court, soft-dollar payments "permit the advisor to select brokers

---

[1] The prior advisory agreements also permitted soft-dollar payments. See Halebian v. Berv, 631 F. Supp. 2d 284, 289 (S.D.N.Y. 2007).

4

or dealers who provide both brokerage and research services to the Funds, even though the commissions charged by such brokers or dealers might be higher than those charged by other brokers or dealers who provide execution only or execution and research services." Halebian v. Berv, 631 F. Supp. 2d 284, 289 (S.D.N.Y. 2007).

Second, the voting procedures employ "echo voting," in which Citigroup-affiliated service agents who were record holders of shares for which instructions had not been received would vote those shares "in the same proportion as the votes received from its customers for which instructions have been received." Compl. ¶ 45 (internal quotation marks omitted).[2]

The Demand Letter and the Board's Response

On February 8, 2006, Halebian, through counsel, expressed his dissatisfaction with the Transaction by letter to the Board. Compl. ¶ 48. He asserted that in connection with the

---

[2] This practice is described in the Trust's most recent prospectus, in the "Trust Instrument" (the source of the shareholders' contractual rights), and in the relevant proxy statement. Halebian, 631 F. Supp. 2d at 289 n.2. The proxy statement notified the shareholders that:

> With respect to any shares for which a Citigroup-affiliated service agent (other than a broker-dealer) is the holder of record and for which it does not receive voting instructions from its customers, such service agent intends to vote those shares in the same proportion as the votes received from its customers for which instructions have been received.

Id. at 289.

5

Transaction and contrary to its fiduciary duty, the Board "placed the interests of Citigroup before those of the Fund and . . . [its] shareholders" and "failed to avail itself of the opportunity presented to seek to negotiate lower fees" on behalf of the Trust "or to seek competing bids from other qualified investment advisers." Letter from Joel C. Feffer to the Bd. of Trs. of the Citi N.Y. Tax Free Reserves Series of Citi Funds Trust III 1-2 (Feb. 8, 2006). The letter demanded "that the board take action which would include, among other things, the institution of an action for breach of fiduciary duty against any and all persons who are responsible for the board's dereliction of its duties in connection with the . . . transaction" and that "appropriate remedial measures . . . be undertaken, including seeking bids for the advisory contract from other qualified investment advisers, negotiating new terms more favorable to the [New York] Fund with Legg Mason, or both." Id. at 2.

The demand letter noted that "shareholder approval does not appear to have been obtained properly," presumably a reference to the echo voting practices described in the proxy statement. The letter did not, however, make a demand with respect to this purported impropriety because, the letter said, the impropriety "gives rise to direct, rather than derivative, claims." Id. at 1 n.1.

The Board acknowledged receipt of the demand letter. Compl. ¶ 49. It later advised Halebian that it had created a "Demand Review Committee" to review his complaint, and that the

6

committee had retained counsel.  Id. ¶ 50.  Throughout this period of time, counsel for both Halebian and the Demand Review Committee remained in communication with one another.

Halebian's Complaint

On May 30, 2006, more than ninety days after the date of Halebian's original demand letter, not having received a definitive response from the Demand Review Committee, Halebian filed a three-count complaint in the United States District Court for the Southern District of New York.  In it, he alleges that following his demand letter, Halebian waited "the statutory time required" -- ninety days -- before filing his derivative claim;[3] that such a period "provide[d] more than adequate time" for the Board to have reviewed Halebian's demand and have taken action; and that "[n]ot surprisingly, defendants have failed to take action against themselves."  Compl. ¶ 51.

Claim One, styled as a derivative claim for breach of fiduciary duty, alleges that members of the Board breached their fiduciary duties of good faith and loyalty under Massachusetts law in their "consider[ation of] the Citigroup/Legg Mason transaction and in recommending the new advisory agreements." Id. ¶ 54.  The complaint alleges that the "[d]efendants limited their consideration to whether the . . . transaction would be

---

[3] As discussed in greater detail below, prior to the filing of a derivative claim under Massachusetts law, a shareholder must give the corporation the opportunity to resolve the issue that forms the basis of the claim.  See Mass. Gen. Laws ch. 156D, § 7.42.

7

worse for CitiTrust's beneficiaries than their current situation" and "made no effort to investigate whether a transaction could be fashioned which would benefit CitiTrust's beneficiaries, either with Legg Mason or another asset manager." Id. ¶ 36. Halebian contends that the soft-dollar arrangements allow for the payment of "higher than necessary brokerage commissions," id. ¶ 43, referring to those payments as "kickback[s]," id. ¶ 44.[4]

Claim Two, styled as a direct claim on behalf of Halebian and members of a class of "all persons and entities who held shares of beneficial interest in CitiTrust on August 22, 2005 (the 'Class')," id. ¶ 26, alleges that the proxy statement at issue violated section 20(a) of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. § 80a-20(a), because it contained material misstatements and omissions. First, the echo voting procedures described in the proxy statement violated federal law -- section 15(a) of the ICA, 15 U.S.C. § 80a-15(a) -- and unspecified provisions of Massachusetts law, and that the proxy statement was misleading because it did not so state. Compl. ¶¶

_____

[4] In 2006, the SEC issued an Interpretive Release that provides guidance on the use of "soft dollars" under section 28(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(e)(1). It provides "a safe harbor that allows money managers to use client funds to purchase 'brokerage and research services' for their managed accounts under certain circumstances without breaching their fiduciary duties to clients." Commission Guidance Regarding Client Commission Practices Under Section 28(e) of the Securities Exchange Act of 1934, Exchange Act Release No. 54,165, 71 Fed. Reg. 41,978, 41,978 (July 24, 2006). To qualify under the safe-harbor provision, money managers must "make a good faith determination that the commissions paid are reasonable in relation to the value of the brokerage and research services received." Id. at 41,991.

47, 60. Second, the proxy statement failed to disclose that by virtue of the Transaction, assets of CitiTrust were "diver[ted] . . . for the benefit of others," id. ¶ 60, presumably via soft dollar payments. Based on this "material false and misleading information," Halebian alleges, the "[d]efendants secured approval of the new advisory agreements." Id. ¶ 61.

Claim Three, also styled as a direct claim on behalf of Halebian and members of the Class, id. ¶ 26, asserts that the trustees violated Massachusetts law, id. ¶ 64, by failing fully and fairly to disclose in the proxy statement all material information within their control, namely, the "[im]propriety of the[] voting procedures" and "the diversion of CitiTrust assets for the benefit of others," id. ¶ 65.

The complaint seeks declaratory and injunctive relief and compensatory damages. See Compl. at 20-21, "Prayer for Relief."

Board's Post-Complaint Conduct

By resolution dated July 12, 2006, some six weeks after the timely filing of Halebian's complaint, the Board expressly declined to accede to Halebian's demand, effectively rejecting it. See Res. of the Bd. of Trs. of CitiFunds Trust III 27 (July 12, 2006). The Board stated that it had "studied a large volume of information on the quality and costs of the adviser's services, including a study that indicated the Fund's management fee was in the lowest quintile measured against fees for similar

9

funds, and concluded that the fees were reasonable." Id. at 22. The Board further "found no authority for the proposition that the 1940 Act or Massachusetts law forbids the use of echo voting by a record holder of shares in a vote to approve an advisory contract with a registered mutual fund" and noted that "[e]cho voting is a common practice in the financial industry [the] utility [of which practice] has been recognized both by the Securities and Exchange Commission and the New York Stock Exchange." Id. at 25. According to the Board, "the balance of the Trust's interests weighs against taking the action requested in the Demand Letter." Id. at 26. On that basis, the Board declined to institute any action against its members. It directed its counsel to move to dismiss Halebian's derivative claim instead. Id. at 27-28.

On October 24, 2006, defendants' counsel moved pursuant to, inter alia, Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint.

The District Court Opinion

By Memorandum and Order dated July 31, 2007, the district court granted the defendants' motion to dismiss. See Halebian, 631 F. Supp. 2d at 303.

In addressing Count One, the court acknowledged that Halebian had satisfied Massachusetts's statutory universal demand requirement for derivative actions by demanding that the Trust rectify the alleged improprieties in the Legg-Mason transaction and then waiting the requisite 90 days before filing his suit.

10

See Mass. Gen. Laws ch. 156D, § 7.42. The district court nonetheless dismissed Count One on two other bases.

First, the court concluded that the complaint failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure because it "asserts no basis for 'plaintiff's failure to obtain the action' from the board as required by Rule 23.1." Halebian, 631 F. Supp. 2d at 297-98 (quoting Fed. R. Civ. P. 23.1 (2006)).

Second, the court concluded that dismissal was appropriate pursuant to a then-recently enacted provision of Massachusetts law authorizing the dismissal of derivative actions based on the corporation's good-faith business judgment that prosecution of the action would not be in its best interests. See Mass. Gen. Laws ch. 156D, § 7.44(a). The district court acknowledged that section 7.44, by its terms, applies only to derivative proceedings "commenced after rejection of a demand" and that Halebian's suit had been filed before any rejection of his demand. See id. Nonetheless, the court concluded that dismissal pursuant to section 7.44 would be required "as long as [CitiTrust] rejected the demand after a good faith review," irrespective of whether that rejection post-dated the timely filing of a derivative claim. Halebian, 631 F. Supp. 2d at 294. Upon concluding that section 7.44 applied, the district court dismissed Count One based on its finding that the section's various preconditions had been met -- "an independent group [of the Trust's leadership] has determined in good faith after conducting a reasonable inquiry that the maintenance of the

11

proceeding is not in the [Trust's] best interest." See id. at 295-96 (citing Mass. Gen. Laws ch. 156D, § 7.44(a)).

The district court then addressed Counts Two and Three in tandem, concluding that although Halebian had styled both as direct claims they were in fact derivative claims "because they seek to redress an alleged injury to the Funds." Id. at 302. In light of Halebian's failure to make a demand on the corporation with respect to either of these claims, as is required under Massachusetts's law for any properly filed derivative claim, see Mass. Gen. Laws ch. 156D, § 7.42, the district court dismissed both of them, Halebian, 631 F. Supp. 2d at 303. As an alternative basis for dismissal, the court concluded that Counts Two and Three "sound[ed] in fraud" and failed to meet the "heightened standard of pleading for claims which sound in fraud" as required by Rule 9(b) of the Federal Rules of Civil Procedure. Id.

The district court also concluded that Claim Two -- Halebian's "direct" claim for violation of section 20(a) of the ICA -- failed because, under Alexander v. Sandoval, 532 U.S. 275 (2000), and its progeny, see, e.g., Olmstead v. Pruco Life Ins. Co., 283 F.3d 429 (2d Cir. 2002), no federal private right of action is available for a violation of section 20(a). Halebian, 631 F. Supp. 2d at 298-301.

Halebian appeals. We reserve judgment pending a response by the Supreme Judicial Court of Massachusetts to a question of Massachusetts law that we certify to it.

12

**DISCUSSION**

I. Standard of Review

We review dismissals pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure de novo. See Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005). Where "determination of the sufficiency of allegations of futility depends on the circumstances of the individual case, the standard of review for dismissals based on Fed. R. Civ. P. 23.1 is abuse of discretion." Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 137 (2d Cir. 2004) (internal quotation marks omitted). Where, however, "a challenge is made to the legal precepts applied by the district court in making a discretionary determination, plenary review of the district court's choice and interpretation of those legal precepts is appropriate." Id.

II. Federal Procedural Requirements

A. Rule 12(b)(6)

In accordance with the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), we apply a "plausibility standard" to evaluate whether dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate. Id. at 560. That standard is guided by "[t]wo working principles." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). First, "a court must accept as true all [factual] allegations contained in a complaint" but need not accept "legal conclusions." Id. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to insulate a claim against dismissal. Id. Second, a complaint must "state[] a plausible claim for relief." Id. at 1950. "Determining whether a complaint [does so] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

B.   Rule 23.1

In addition to meeting the generally applicable rules for pleading under the Federal Rules of Civil Procedure, the pleading of derivative actions must satisfy the requirements set forth in Rule 23.1 of the Rules. Fed. R. Civ. P. 23.1. Rule 23.1 applies "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). Complaints asserting derivative claims must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).

Rule 23.1 is a "rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." RCM Secs. Fund, Inc. v. Stanton, 928 F.2d 1318, 1330 (2d Cir. 1991). It does not "'abridge, enlarge or

14

modify any substantive right.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (quoting 28 U.S.C. § 2072(b)). The underlying demand requirement, by contrast, "in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation[,] clearly is a matter of 'substance,' not 'procedure.'" Id. at 96-97 (citing Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 543-44 & n.2 (1984) (Stevens, J., concurring in judgment)). It is therefore governed by state law. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 549 F.3d 137, 141-42 (2d Cir. 2008) ("[F]ederal courts . . . apply state substantive law and federal procedural law . . . . to any issue or claim which has its source in state law."(internal quotation marks omitted)), cert. denied, 129 S. Ct. 2160 (2009).

### III. Massachusetts Substantive Requirements

Even where an underlying cause of action is based on the ICA, as Claim Two is, whether the action is properly classified as derivative or direct is ordinarily determined by state law. See, e.g., Strougo v. Bassini, 282 F.3d 162, 169 (2d Cir. 2002) ("We must fill a gap in the ICA with rules borrowed from state law unless . . . application of those rules would frustrate the specific federal policy objectives underlying the ICA."); id. at 176 ("The expectations of private parties that state law will govern their corporate disputes is even higher when the federal statute invoked does not on its face provide notice to the parties of a possibility of a federal private suit

15

and thereby suggest that federal law may be applied."); see also Burks v. Lasker, 441 U.S. 471, 478 (1979) ("Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute."); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000) (relying on Massachusetts state law to determine whether the plaintiffs' claims brought under the ICA were direct or derivative).

A.   Claim Classification

Under Massachusetts law, a claim based on a "duty owed to the corporation, not to individual stockholders[,]" is properly characterized as derivative, not direct.  Bessette v. Bessette, 385 Mass. 806, 809, 434 N.E.2d 206, 208 (1982); see also Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 525 n.5, 536 N.E.2d 344, 350 n.5 (1989) (observing that any claim by a shareholder alleging a breach of duty to the corporation must be through a derivative action).  In other words, a derivative claim is one where the plaintiff is not "enforc[ing] any personal rights" and has "no direct or personal interest in the suit, excepting as the value of [the plaintiff's] stock might be enhanced."  Shaw v. Harding, 306 Mass. 441, 448, 28 N.E.2d 469, 473 (1940).

Harm to a corporation may manifest itself as harm to its shareholders in the form of a lower stock price.  But the "wrong underlying a derivative action is indirect, at least as to the shareholders.  It adversely affects them merely as they are

16

the owners of the corporate stock; only the corporation itself suffers the direct wrong." Jackson v. Stuhlfire, 28 Mass. App. Ct. 924, 925, 547 N.E.2d 1146, 1148 (1990) (emphasis in original) (internal quotation marks omitted). Therefore, "[t]o bring a direct action under Massachusetts law, a plaintiff must allege an injury distinct from that suffered by shareholders generally or a wrong involving one of his or her contractual rights as a shareholder, such as the right to vote." Lapidus, 232 F.3d at 683.[5]

B.   Demand Requirement for Derivative Claims

Courts have traditionally required "as a precondition for [a derivative] suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand." Scalisi, 380 F.3d at 138 (citations and internal quotation marks omitted).[6] As the Massachusetts Supreme Judicial Court

---

[5] Massachusetts law appears to comport with the approach of federal law in this regard. In determining whether a suit is derivative for purposes of the Federal Rules of Civil Procedure, "the term 'derivative action' . . . has long been understood to apply only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court." Daily Income Fund, Inc., 464 U.S. at 529. The Supreme Court has characterized derivative actions as "permit[ting] an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" Kamen, 500 U.S. at 95 (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)) (emphasis in original); accord Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548 (1949) (Through a derivative action, a stockholder may "step into the corporation's shoes and . . . seek in its right the restitution he could not demand in his own.").

[6] A derivative action has been described as an "equitable device" developed "to enable shareholders to enforce a corporate right . . . that the corporation had either failed or refused to assert on its own behalf." Scalisi, 380 F.3d at 138 (internal

17

explained, "[t]he rationale behind the demand requirement is that, as a basic principle of corporate governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit." Harhen v. Brown, 431 Mass. 838, 844, 730 N.E.2d 859, 865 (2000); accord RCM Secs. Fund, 928 F.2d at 1326 ("Whether a corporation should bring a lawsuit is a business decision, and the directors are, under the laws of every state, responsible for the conduct of the corporation's business, including the decision to litigate. A shareholder demand that the corporation bring litigation is thus a method by which the appropriate corporate authority may be consulted about litigation to be brought in the name of the corporation." (citations and internal quotation marks omitted)).

Thus, so long as it is exercising its good faith business judgment, a corporation is ordinarily entitled to decide through its board of directors that refusing, in part or in whole, the demand to take action would be in its best interests. See Harhen, 431 Mass. at 846, 730 N.E.2d at 866 ("It is axiomatic that the decision of a disinterested board to refuse demand receives the protection of the business judgment rule.").

quotation marks and citation omitted); cf. Hirshberg v. Appel, 266 Mass. 98, 100, 164 N.E. 915, 915 (1929) ("The law is settled that for such injury to a corporation, a stockholder has no right to maintain an action at law. A suit for redress must be brought by the corporation."). It is "an exception to the normal rule that the proper party to bring a suit on behalf of a corporation is the corporation itself, acting through its directors or a majority of its shareholders." Daily Income Fund, 464 U.S. at 542.

State law generally determines whether, in an action classified as derivative, a pre-suit demand is necessary, and if so, whether the demand made was adequate. "Where a state claim is involved, . . . the source of the demand requirement must be the law of the state of incorporation." RCM Secs. Fund, 928 F.2d at 1327. If a federal derivative claim is involved, however, the "contours of the demand requirement . . . are governed by federal law." Kamen, 500 U.S. at 97 (emphasis omitted). But "[i]t does not follow . . . that the content of such a rule must be wholly the product of a federal court's own devising." Id. at 98. In "areas [such as corporation law] in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards," we entertain a strong presumption that "state law should be incorporated into federal common law." Id. We will therefore incorporate state law governing pre-suit demand if that law is not "inconsistent with the policies underlying" federal securities law. Id. at 107.[7]

C. Massachusetts Business Corporation Act

---

[7] As noted, "Rule 23.1 [of the Federal Rules of Civil Procedure] is a rule of pleading [regarding] the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question," but "the adequacy of those efforts is to be determined by state law absent a finding that application of state law would be inconsistent with a federal policy underlying a federal claim in the action." RCM Secs. Fund, 928 F.2d at 1330; accord Abramowitz v. Posner, 672 F.2d 1025, 1026 (2d Cir. 1982) (noting that "the authority of disinterested directors to terminate shareholder derivative litigation is governed by applicable state law, provided that such law is consistent with the policies of the federal acts upon which the action is based").

19

Several years ago, the Massachusetts Legislature enacted a comprehensive statute governing Massachusetts corporations. The Massachusetts Business Corporation Act (the "Act"), enacted on November 26, 2003, see 2003 Mass. Acts ch. 127, and made effective as of July 1, 2004, see 2004 Mass. Acts ch. 178, § 49, is codified as Chapter 156D of Title XXII of the General Laws of Massachusetts. Subdivision D of Part 7 of the Act contains various provisions governing derivative suits, see Mass. Gen. Laws ch. 156D, §§ 7.40-7.47, three of which are pertinent here.

First, the Act adopts a "universal demand requirement," Johnston v. Box, 453 Mass. 569, 578 n.15, 903 N.E.2d 1115, 1123 n.15 (2009), requiring that a shareholder make a written demand upon the corporation and then wait a specified period of time before filing any derivative action on behalf of the corporation. See Mass. Gen. Laws ch. 156D, § 7.42; accord Forsythe v. Sun Life Fin., Inc., 417 F. Supp. 2d 100, 110 n.13 (D. Mass. 2006). Section 7.42 prohibits, without exception, the filing of any derivative action absent such written demand. See Mass. Gen. Laws ch. 156D, § 7.42; accord ING Principal Prot. Funds Derivative Litig., 369 F. Supp. 2d 163, 170 (D. Mass. 2005). Section 7.42 therefore abrogates prior common law exceptions to the demand requirement. See, e.g., Pupecki v. James Madison Corp., 376 Mass. 212, 218, 382 N.E.2d 1030, 1034 (1978) (reflecting previous common law doctrine that demand is

unnecessary "if it is clear that [such a demand] would be futile").

Second, the Act authorizes a court to stay any derivative proceeding to allow a corporation to conclude its inquiry into the allegations made in the demand or complaint. See Mass. Gen. Laws ch. 156D, § 7.43. Section 7.43 provides that "[i]f the corporation commences an inquiry into the allegations made in the demand or complaint, the court may stay any derivative proceeding for a period as the court considers appropriate." Id.

Third, the Act sets forth a procedure by which a corporation can seek dismissal of derivative actions that it concludes would not be in its best interests to prosecute. See id. § 7.44. Section 7.44 mandates dismissal of any "derivative proceeding commenced after rejection of a demand" by motion of the corporation if the court finds that the corporation, by "majority vote of independent directors present at a meeting of the board of directors," concluded "in good faith after conducting a reasonable inquiry" that the derivative proceeding "is not in the best interests of the corporation." Id. § 7.44(a), (b)(1).

The corporation must support such a motion with a written filing "setting forth facts" that demonstrate that "a majority of the board of directors was independent at the time of the determination by the independent directors" and that the decision was made "in good faith after . . . a reasonable

21

inquiry." Id. § 7.44(d). Upon the filing of a proper motion, "[a]ll discovery proceedings shall be stayed" pending the court's resolution of that motion, except that "the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted." Id. Where the corporation's pleadings are proper, the court must dismiss the derivative action "unless the plaintiff has alleged with particularity facts rebutting the corporation's filing in its complaint or an amended complaint or in a written filing with the court." Id.

IV. Counts Two and Three

We first address Halebian's argument that the district court erred in characterizing Counts Two and Three as derivative, despite the fact that the complaint styles them as direct, and dismissing both for failure to comply with Massachusetts's universal demand requirement. See id. § 7.42.[8] The court concluded that the claims were derivative because they "fail[] to articulate a theory by which the alleged harm to shareholders which resulted from the [allegations] was separate and independent from the harm allegedly resulting to the Fund itself." Halebian, 631 F. Supp. 2d at 303.

One aspect of both Counts Two and Three is undoubtedly derivative -- that the Board violated its fiduciary duties by

---

[8] Halebian does not contest that, assuming the claims are in fact derivative, they fail to comply with section 7.42. Nor does he contest the district court's conclusion that "[t]he nature or character of a claim against a corporation is determined according to the law of the state of the corporation, and not dictated by the form the plaintiff chooses to plead in his or her complaint." Halebian, 631 F. Supp. 2d at 301.

22

failing to disclose "the diversion of CitiTrust assets for the benefit of others." Compl. ¶¶ 60, 65. This is plainly an attempt to restate a classic derivative claim -- that the corporation was harmed because its assets were diverted, thereby harming the corporation's shareholders. See, e.g., Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 517, 677 N.E.2d 159, 172 (1997); P'ship Equities, Inc. v. Marten, 15 Mass. App. Ct. 42, 50, 443 N.E.2d 134, 138 (1982). The district court did not err in rejecting Counts Two and Three insofar as they contain such allegations.

The counts, insofar as they relate to the "propriety of the[] voting procedures," Compl. ¶ 65; see also id. ¶ 60, are more difficult to classify. Halebian contends that the proxy statement was "materially false and misleading because it fail[ed] to advise beneficial holders that the use of echo voting to approve an investment advisory agreement violate[ed] both the ICA and Massachusetts law." Halebian Br. 36. He describes these claims as "paradigmatic direct claims because they involve a beneficial holder's right to cast an informed vote." Id. at 35. He insists that "the harm caused by a violation of a holder's right to cast an informed vote is inherently 'separate and independent' from any harm caused [to] CitiTrust simply because CitiTrust has no right to cast any vote, much less an informed vote." Because CitiTrust issued the allegedly improper proxy statement, he says, it could not be harmed by a misrepresentation in that statement. Id. at 43-44.

23

Indeed, Massachusetts's highest court has long recognized corporations' shareholders' "right to vote" their shares. See Seibert v. Milton Bradley Co., 380 Mass. 656, 662, 405 N.E.2d 131, 135 (1980); Ky. Package Store, Inc v. Checani, 331 Mass. 125, 129, 117 N.E.2d 139, 142 (1954). By statute, Massachusetts law provides, as a general default rule, that "each outstanding share, regardless of class, is entitled to 1 vote on each matter voted on at a shareholders' meeting, . . . each fractional share is entitled to a proportional vote," and "[o]nly shares are entitled to vote." Mass. Gen. Law ch. 156D, § 7.21(a). Therefore, shareholders of a corporation, not the corporation itself, are entitled to vote. Relatedly, shares that are "owned . . . by another entity of which the corporation owns . . . a majority of the voting interests" are not entitled to vote. Id. § 7.21(b). In effect, voting those shares would constitute voting by the corporate entity itself, which is forbidden.[9]

Federal courts interpreting Massachusetts law have observed that although injuries that are not distinct to each affected shareholder generally give rise to derivative claims, not all indistinct injuries do so. As the Ninth Circuit has pointed out, to assert a direct claim, "it is unnecessary to allege an injury distinct from that suffered by shareholders generally if the alleged injury is predicated upon a violation of

[9] A corporation is, however, entitled to "vote any shares, including its own shares, held by it, directly or indirectly, in a fiduciary capacity." Mass. Gen. Laws ch. 156D, § 7.21(c).

a shareholder's voting rights." Lapidus, 232 F.3d at 683. A district court in the District of Massachusetts has explained:

> [W]hat differentiates a direct from a derivative suit is neither the nature of the damages that result from the defendant's alleged conduct, nor the identity of the party who sustained the brunt of the damages, but rather the source of the claim of right itself. If the right flows from the breach of a duty owed by the defendants to the corporation, the harm to the investor flows through the corporation, and a suit brought by the shareholder to redress the harm is one "derivative" of the right retained by the corporation. If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is "direct."

Stegall v. Ladner, 394 F. Supp. 2d 358, 364 (D. Mass. 2005) (internal quotation marks omitted); accord Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 26 (D. Mass. 1996); Weber v. King, 110 F. Supp. 2d 124, 132 (E.D.N.Y. 2000); cf. Strougo, 282 F.3d at 171 ("To sue directly under Maryland law, a shareholder must allege an injury distinct from an injury to the corporation, not from that of other shareholders."). For these reasons, the fact "[t]hat many investors might have been misled . . . or that the plaintiff might only be minimally injured[] does not [alone] convert the claim to a derivative one." Blasberg, 934 F. Supp. at 26.

Based on these principles, Halebian asserts that any claim of the use of improper voting procedures necessarily states a direct rather than a derivative claim. Relying on Delaware law, see Sarin v. Ochsner, 48 Mass. App. Ct. 421, 423, 721 N.E.2d

25

932, 934-35 (2000) (applying Delaware law to determine whether claims were direct or derivative), he also insists that Massachusetts shareholders have not only the right to vote, but the "right to cast an informed vote." In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 766, 772 (Del. 2006); accord In re Tyson Foods, Inc., 919 A.2d 563, 601 (Del. Ch. 2007) ("Where a shareholder has been denied one of the most critical rights he or she possesses [as a shareholder] -- the right to a fully informed vote -- the harm suffered is almost always an individual, not corporate, harm.").[10]

Halebian points us to no appellate court in Massachusetts that has specifically embraced Delaware law in this regard, and our research has revealed none. Cf. Weitman v. Tutor, 24 Mass. L. Rptr. 343 (Mass. Super. Ct. 2008) (noting that "a shareholder's right to make an informed vote may, in some circumstances, provide a basis for injunctive relief" (citing Eisenberg v. Chicago Milwaukee Corp., 537 A.2d 1051, 1062 (Del. Ch. 1987))); Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc., 532 A.2d 1324, 1342 (Del. Ch. 1987). Even were we to conclude that Massachusetts law tracks Delaware law in this regard, however, we would remain unpersuaded that Counts Two and Three can stand as individual claims. We do not think that Halebian has alleged an

---

[10] Delaware courts have also recognized, as a corollary, that shareholders have the "right not to attend a meeting" and the "right not to vote on any matter," i.e., the "right to withhold [the shareholder's] vote on any particular proposal." Berlin v. Emerald Partners, 552 A.2d 482, 493 (Del. 1988) (emphasis added) (internal quotation marks omitted).

26

actionable non-disclosure claim under either Massachusetts or federal law.

The essence of Halebian's claim is not that the defendants failed to inform him and others similarly situated that the voting procedures incorporated echo voting, but that echo voting is unlawful. Many courts have expressed reluctance to conclude that a proxy statement is misleading "when it fail[s] to disclose a legal theory with which the corporation did not agree and which was never called to its attention." Ash v. LFE Corp., 525 F.2d 215, 220 (3d Cir. 1975); see also Bolger v. First State Fin. Servs., 759 F. Supp. 182, 194 (D. N.J. 1991) ("[C]ompanies have no duty to disclose legal theories as to how a given transaction violated the law."); Freedman v. Barrow, 427 F. Supp. 1129, 1144 (S.D.N.Y. 1976) ("Failure to disclose a legal theory with which those soliciting do not agree and which was not called to their attention at the proper time does not violate" federal rules prohibiting untrue statements of material fact); Goldberger v. Baker, 442 F. Supp. 659, 667 (S.D.N.Y. 1977) (noting that "the allegation that the [proxy] statement failed to disclose the 'legal significance' of the [proposed] option plan" at issue was "so vague as to defy analysis"); Voege v. Magnavox Co., 439 F. Supp. 935, 941 (D. Del. 1977) ("A proxy statement, based upon the opinion of properly qualified outside counsel . . ., even if the opinion is wrong, cannot be deemed to be a misrepresentation or concealment of a material fact . . . ."); cf. Maldonado v. Flynn, 597 F.2d 789, 796, 798

27

(2d Cir. 1979) (citing Ash and Goldberger with approval, but concluding that the proxy statements at issue were misleading based on nondisclosure of "factual information 'impugning the honesty, loyalty or competency of directors' in their dealings with the corporation to which they owe a fiduciary duty" -- that "senior officers [were able] to avoid the adverse personal tax effect of the [transaction at issue], known to them through inside information, while depriving the Corporation of a corresponding tax benefit").

There is no indication that the alleged unlawfulness of echo voting under section 15(a) of the ICA or Massachusetts law was called to the attention of the Board by Halebian or anyone else prior to the institution of this lawsuit. And the Board has consistently and strenuously denied that echo voting violates these laws.[11] Since the Board was apparently not of the view, nor had it been told, that using a Citigroup-affiliated service agent other than a broker-dealer to echo vote shares violated the ICA or Massachusetts law, or indeed any law, its failure to

---

[11]    In connection with the demand-review process, the corporation found "no authority for the proposition that the 1940 Act or Massachusetts law forbids the use of echo voting by a record holder of shares in a vote to approve an advisory contract with a mutual fund" and noted that "[e]cho voting is a common practice in the financial industry whose utility has been recognized both by the Securities and Exchange Commission and the New York Stock Exchange." See Res. of the Bd. of Trs. of CitiFunds Trust III 25 (July 12, 2006). Although Halebian vehemently insists that echo voting, in this context, is unlawful, we note that he has failed to cite any court decision that has so suggested or held. We do not address the merits of Halebian's claim that echo voting violates section 15 of the ICA and Massachusetts law.

inform shareholders to the contrary does not appear to us to have been potentially false and misleading so as to be cognizable under Massachusetts or federal law.[12]

## V. Count One

The parties agree that Count One asserts a derivative claim under Massachusetts law, and that the complaint was filed in accordance with section 7.42's universal demand requirement. We therefore must decide whether dismissal of the claim pursuant to section 7.44 was proper. We conclude that dismissal was not required because of Halebian's failure to meet federal procedural requirements. We decline to resolve in the first instance, at least at this time, however, whether dismissal was required under Massachusetts law. Instead, we certify that question of Massachusetts law, which is critical to the resolution of this appeal, to the Supreme Judicial Court of Massachusetts.

## A. Federal Procedural Law

The district court decided that the complaint required dismissal because it did not comply with Rule 23.1 of the Federal Rules of Civil Procedure. Were this conclusion correct, we would have no need to address the court's alternate conclusion that

---

[12]   We note that Halebian's contention that the proxy statement should also have disclosed that the Securities Exchange Commission and the New York Stock Exchange ("NYSE") have ruled that NYSE member broker-dealers may not echo vote shares to obtain shareholder approval of an investment company's investment advisory contract with a new investment advisor is utterly without merit, as the proxy statement explicitly contains this information. See Finn Declaration Exhibit D ("Schedule 14A"), at 8, Halebian v. Berv, No. 06 Civ. 4099 (S.D.N.Y. filed May 30, 2006) (Doc. No. 22).

dismissal of Count One was also required under Massachusetts law. We conclude, however, that the district court erred with respect to Rule 23.1.

Rule 23.1 is a "rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." RCM Secs. Fund, 928 F.2d at 1330. It "is not the source of any such requirement." Daily Income Fund, 464 U.S. at 543 (Stevens, J., concurring in judgment). State law is the source. The federal rule "merely requires that the complaint in such a case allege the facts that will enable a federal court to decide whether such a demand requirement has been satisfied," concerning itself "solely with the adequacy of the pleadings." Id. at 543-44.

The district court dismissed Count One for failure to state "the reasons for not obtaining the [desired] action" from the Board as required by Rule 23.1. Fed. R. Civ. P. 23.1(b)(3)(B); see also Halebian, 631 F. Supp. 2d at 295-98. Halebian's demand allegations, however, set forth all the information needed to determine whether, as a matter of Massachusetts law, the complaint was filed in accordance with Massachusetts's universal demand rule. See Mass. Gen. Laws Ch. 156D, § 7.42.

For a derivative proceeding to have been properly filed pursuant to section 7.42, Halebian had to have made "written demand . . . upon the corporation to take suitable action" and

30

waited "90 days . . . from the date the demand was made" to file suit.  Id.  Halebian's complaint alleges both.  And Halebian's complaint specifically alleges the reason that the corporation declined to accede to his demands -- that the members of the board were motivated by self-interest to reject his demand.  Nothing else was required to allow the court to determine whether, as a matter of Massachusetts law, Halebian's complaint was properly filed.  Halebian's complaint satisfies the heightened pleading requirements of Rule 23.1 on this score.

Count One therefore stands or falls on whether it was properly dismissed pursuant to Massachusetts substantive law.

B.   State Substantive Law

Halebian contends that the district court erred in concluding that section 7.44 and its protection for a board of directors' good faith decision that litigation is not in the defendant corporation's best interests applied in this case.[13]  He initiated this action following the expiration of the post-demand statutory waiting period set forth in section 7.42, but before the corporation rejected his demand.  And section 7.44, by its terms, applies to "derivative proceeding[s] commenced after rejection of a demand."  Mass. Gen. Laws Ch. 156D, § 7.44(a) (emphasis added).  The district court nonetheless held that

_____

[13] He also argues in the alternative that even if section 7.44 applied the district court erred by barring him from seeking discovery and by failing to convert the corporation's motion to dismiss to a motion for summary judgment.  At this stage of the proceedings, however, we need only address Halebian's first argument.

section 7.44 applies, concluding that the section is applicable to derivative proceedings commenced <u>before</u> rejection of a demand "as long as [the corporation's board] rejected the demand after a good faith review."  <u>Halebian</u>, 631 F. Supp. 2d at 294.

Relying on statutory commentaries, the district court concluded that the state legislature contemplated "that section 7.44 could be applicable to cases . . . where a plaintiff has waited the requisite ninety days after the written demand to file a complaint, but the corporation did not reject the demand until after the filing of the complaint" because in some situations "a board would need more than ninety days to evaluate a shareholder's demand before determining whether to pursue the litigation."  <u>Id.</u> at 295.[14]

The district court also explained that reading section 7.44 as written, and thereby preventing corporations that "had

_____

[14] The decision by a corporation to reject a demand, according to the commentary to section 7.44, "'can be made prior to the commencement of the suit in response to a demand <u>or after commencement upon examination of the allegations of the complaint</u>.'"  <u>Halebian</u>, 631 F. Supp. 2d at 295 (quoting Mass. Gen. Law Ann. ch. 156D, § 7.44, cmt. background (emphasis added by the district court)).  A related commentary to the neighboring universal-demand-requirement provision in section 7.42 notes that although the statutory waiting provisions set forth in that section had been "'chosen as a reasonable minimum time[] within which the board of directors [or] the shareholders can meet, direct the necessary inquiry into the charges, receive the results of the inquiry, and make its or their decision,'" nonetheless "'[i]n some instances a longer period may be required,'" and that in those instances the corporation "'may request counsel for the shareholder to delay filing suit until the inquiry is completed or, if [the] suit is commenced, the corporation can apply to the court for a stay under § 7.43.'"  <u>Halebian</u>, 631 F. Supp. 2d at 295 (quoting Mass. Gen. Law Ann. ch. 156D, § 7.42, cmt. 3).

not completed a good faith, reasonable inquiry into the efficacy of the maintenance of the derivative proceeding after ninety days" from being "able to avail themselves of Massachusetts' codification of the business judgment rule," would "render[] meaningless" section 7.43, the stay provision. Id. The court considered this to be a "curious result" that would encourage "a race to the courthouse for shareholder plaintiffs, as filing on the ninety-first day after a written demand would automatically foreclose corporate boards that otherwise were proceeding appropriately in response to the demand from availing themselves of section 7.44." Id.

We have doubts about the district court's reasoning in this regard. Assuming arguendo that relevant statutory commentary and policy arguments suggest otherwise, it is a well-established principle of Massachusetts law that when "the language of the statute is clear, we must enforce it according to its terms." Town of Milford v. Boyd, 434 Mass. 754, 757-58, 752 N.E.2d 732, 735 (2001) (internal quotation marks omitted). Here, the relevant provision of section 7.44 is clear enough -- it applies to "derivative proceeding[s] commenced after rejection of a demand." Mass. Gen. Laws Ch. 156D, § 7.44. By negative implication, the section would appear not to apply to derivative proceedings commenced before rejection of a demand. The district court's reading in effect excised the statutory phrase: "commenced after rejection of a demand."

33

We recognize, of course, that under Massachusetts law, as elsewhere, context matters. "[S]tatutes . . . enacted together . . . as part of a carefully-crafted statutory plan . . . must be construed together so as to constitute a harmonious whole consistent with the legislative purpose." Commonwealth v. Renderos, 440 Mass. 422, 432-33, 799 N.E.2d 97, 106 (2003) (internal quotation marks omitted). But we remain unconvinced that the statutory context required the district court to take the path that it did.

To be sure, and as the district court noted, the commentary to section 7.44 clearly anticipates that in some instances, a corporation might require more than ninety days to investigate and respond to the shareholder's demand. And, as the district court explained, section 7.43 might be rendered meaningless if section 7.44 were categorically inapplicable to corporations that did not complete their investigations prior to institution of the derivative proceeding. To this extent, the terms of section 7.44 may need to bend to accommodate contrary statutory provisions.

But here, no stay was sought or obtained. And the district court's reading of section 7.44, ignoring its language appearing to limit its application to suits commenced after rejection of a demand by a board directors, seems to leave section 7.43 with little purpose, if any. If a corporation can invoke section 7.44 at any time based on a good-faith rejection of the demand even after the litigation is under way and without

a stay in place, then there would appear to be little need for the stay provision of section 7.43.

If, by contrast, section 7.43 operates to extend the time period within which a corporation is able to invoke section 7.44, then the stay provision would play a critical role in the statutory scheme. Construing these two sections together, it may well be that 7.44 applies to timely derivative actions filed before the rejection of the demand that serves as the basis for the action not in all circumstances, as the district court's ruling suggests, but only when such an action was actually stayed in accordance with section 7.43.

This reading, although not without its difficulties,[15] appears to be consistent with other statutory commentary, including commentary that the district court itself identified. According to the commentary to section 7.42, where a corporation needs more time than the provisions of section 7.42 give it to investigate, and perhaps reject, the shareholder demand, it "'may request counsel for the shareholder to delay filing suit until the inquiry is completed or, if [the] suit is commenced, . . . apply to the court for a stay under § 7.43.'" Halebian, 631 F. Supp. 2d at 295 (citing Mass. Gen. Law Ann. ch. 156D, § 7.42, cmt. 3 (alteration in original)). Similarly, commentary to section 7.43 notes that the "court may in its discretion stay the

---

[15] For example, this reading leaves unresolved the issue of whether a stay must be sought or entered within a certain period of time following the filing of the original complaint in order to toll the provisions of section 7.44.

proceeding for such period as the court deems appropriate" where "the complaint is filed 90 days after demand but the inquiry into the matters raised by the demand has not been completed or where a demand has not been investigated but the corporation commences the inquiry after the complaint has been filed." See Mass. Gen. Law Ann. ch. 156D, § 7.43, cmt. (West 2009).

Both passages suggest that the Massachusetts Legislature anticipated that a corporation that had not completed its investigation following the expiration of the period set forth in section 7.42 and which was unwilling or unable to convince the shareholder to refrain from filing suit would seek court approval for further delays to permit further investigation. And as a result of court supervision as a condition of extending the time within which a demand can be investigated, the legislature seems to have anticipated that the court would "monitor the course of the [corporation's] inquiry to ensure that it is proceeding expeditiously and in good faith." Id. Reading section 7.44 as written except insofar as it is modified by the operation of section 7.43 seems to us to be consistent with this commentary.

Moreover, such a reading does not, we think, pose an unfair hardship on Massachusetts corporations. Rather it would appear to facilitate the Massachusetts Legislature's goal, as stated in the statutory commentary, to ensure that derivative actions are dismissed so long as the corporation "promptly

determine[s]" to reject the demand.  Mass. Gen. Law Ann. ch. 156D, § 7.44, cmt. (West 2009).

VI.  Certification

We have endeavored to identify relevant issues raised with respect to the Massachusetts Business Corporation Act and to proffer our best reading of section 7.44.  We think it appropriate, however, to reserve judgment and certify a question necessary to the resolution of this appeal to the Supreme Judicial Court pursuant to Massachusetts Supreme Judicial Court Rule 1:03.[16]  We do so because the appeal presents "unsettled and significant questions of state law [that] will control the outcome of [the] case."  Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 229 (2d Cir. 2006) (internal quotation marks omitted); accord Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008); Nieves v. Univ. of P.R., 7 F.3d 270, 274 (1st Cir. 1993).  A proper reading of the Massachusetts Business

---

[16]  The Rule provides in part:

> § 1. Authority to Answer Certain Questions of Law.  This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.

Mass. S.J.C. R. 1:03.

37

Corporation Act is, it seems to us, important to the effective regulation by the Commonwealth of Massachusetts of corporations, and, in this case, business trusts, incorporated under its laws, and to our knowledge, no appellate court has ever discussed section 7.44 or section 7.43, let alone at any length or as they apply to the situation presented in this appeal. The First Circuit, more intimately familiar than are we with the workings of the Supreme Judicial Court, has observed that the court "has indicated a willingness, under such circumstances, to answer certified questions." Foxworth v. St. Amand, 570 F.3d 414, 437 (1st Cir. 2009).

We therefore certify the following question to the Supreme Judicial Court of Massachusetts for its consideration:

> Under Massachusetts law, can the business judgment rule, established under Mass. Gen. Laws ch. 156D, § 7.44, be applied to dismiss a derivative complaint filed timely under section 7.42 but prior to a corporation's rejection of the demand that serves as the basis for the suit?

We certify that this question is to the best of our understanding determinative of a claim in this case and that it appears to us that there is no controlling precedent in either the decisions or rules of practice of the Supreme Judicial Court.

We respectfully invite any additional guidance about relevant Massachusetts law or practice that the Supreme Judicial Court may wish to offer in responding to the certified question. The certified question may be deemed to cover any pertinent further issues of Massachusetts law that the Supreme Judicial

38

Court thinks is appropriate and advisable to address, including those issues addressed in the portion of our opinion discussing the propriety of the district court's dismissal of Counts Two and Three. For this reason, although we have stated our conclusions with respect to Counts Two and Three as though they were definitive, we reserve decision on all issues on appeal pending the Supreme Judicial Court's response to our certification.

This Court will issue a Certification Order pursuant to Massachusetts Supreme Judicial Court Rule 1:03. The Clerk of this Court is directed to forward to the Supreme Judicial Court of Massachusetts, under the official seal of this Court, the Certification Order, this opinion, and the briefs and appendices filed by the parties. Pending the receipt of a response, this Court and this panel shall retain appellate jurisdiction.

**CONCLUSION**

For the foregoing reasons, we reserve judgment and certify the stated question to the Supreme Judicial Court of Massachusetts.